No. 26-1410

# UNITED STATES COURT OF APPEALS

# FOR THE FIRST CIRCUIT

_____

# PHILIBERT KONGTCHEU,

Plaintiff-Appellant,

v.

# COMCAST CORPORATION, et al., and

# CREDENCE RESOURCE MANAGEMENT, LLC,

Defendants-Appellees.

_____

On Appeal from the United States District Court

for the District of Massachusetts

No. 1:25-cv-11869-RGS (Hon. Richard G. Stearns)

_____

ORAL ARGUMENT REQUESTED

# BRIEF OF PLAINTIFF-APPELLANT

_____

Philibert F. Kongtcheu

Plaintiff-Appellant, pro se

195 Binney Street #2311

Cambridge, MA 02142

(646) 535-8027

kongtcheu@gmail.com

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiff-Appellant Philibert Kongtcheu states that he is an individual proceeding pro se. He is not a corporation, has no parent corporation, and issues no stock; accordingly, no corporate disclosure is required.

**STATEMENT REGARDING RELATED CASES**

Pursuant to First Circuit Local Rule 28.0(a)(1) Plaintiff-Appellant Philibert Kongtcheu states that there are no related cases pending before the First Circuit.

**TABLE OF CONTENTS**

**CORPORATE DISCLOSURE STATEMENT**     **1**

**STATEMENT REGARDING RELATED CASES**     **1**

**TABLE OF CONTENTS**     **2**

TABLE OF AUTHORITIES     3

JURISDICTIONAL STATEMENT     5

STATEMENT OF THE ISSUES     7

Figure 1. Relationship Among the Issues Presented     7

STATEMENT OF THE CASE     9

STATEMENT OF FACTS     10

SUMMARY OF THE ARGUMENT     12

**ISSUE I**     **15**

Introduction: The Interlocked Orders Now Before This Court     15

A. Standard of Review     17

B. The District Court's Stated Reasons Cannot Sustain the Denial     19

C. The Proposed Amendment Is Not Futile Under the Correct Rule 12(b)(6) Standard     24

D. The District Court Itself Created the Need for the Amendment     25

E. The Amendment Cured Defects Identified by Both the Court and the Defendants     26

Conclusion of Issue I     27

**ISSUE II**     **28**

Introduction     28

A. Standard of Review     29

B. The Lead Error: The Court Evaluated Pleading Sufficiency Rather Than Record Disputes     30

C. The Summary Judgment Record Rested on an Affidavit the Court Should Have Excluded     31

D. The Court Ignored Documentary Evidence -- Including CRM's Own Admissions -- That Created Genuine Disputes     36

E. The Court Resolved the Debt-Validity Question Against Plaintiff While Deferring It to Arbitration     39

F. The Court's Reading of § 1692g(b) Is Wrong as a Matter of Law     40

G. The Refusal to Reach the FCRA, c. 93A, 940 CMR 7.00, and IIED Claims Cannot Stand     40

Conclusion of Issue II     41

**ISSUE III**     **44**

Introduction     44

A. Standard of Review 45

B. The Court Applied the Wrong Legal Framework: Formation Is a Gateway Question Decided Without Any Presumption Favoring Arbitration 45

C. The Agreement's Own Terms Reserve Validity and Formation to the Court 47

D. Comcast Failed to Carry Its Burden of Proving Formation 48

E. The Two Transactions Must Be Distinguished -- and Neither Supports Arbitration 50

F. Reversal of ECF 84 Independently Requires Reconsideration of ECF 72 52

G. Comcast's Litigation Conduct Independently Supports Reconsideration of Waiver Under Morgan 53

Conclusion of Issue III 54

**ISSUE IV** **56**

Introduction 56

A. Governing Principles 56

B. Illustrative Asymmetries 57

C. The Cumulative Effect 61

D. Remedy 61

**CONCLUSION** **63**

**CERTIFICATE OF COMPLIANCE** **63**

**CERTIFICATE OF SERVICE** **64**

## TABLE OF AUTHORITIES

**Cases**

Acosta-Mestre v. Hilton Int'l of P.R., Inc., 156 F.3d 49 (1st Cir. 1998) 23

Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) 30

Adorno v. Crowley Towing & Transp. Co., 443 F.3d 122 (1st Cir. 2006) 18, 21, 22

Air-Con, Inc. v. Daikin Applied Latin Am., LLC, 21 F.4th 168 (1st Cir. 2021) 45, 47, 54

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) 30, 31, 38, 39

Aponte-Torres v. Univ. of P.R., 445 F.3d 50 (1st Cir. 2006) 23

AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643 (1986) 46

Bartlett v. Heibl, 128 F.3d 497 (7th Cir. 1997) 40

Bridge v. Ocwen Fed. Bank, FSB, 681 F.3d 355 (6th Cir. 2012) 63

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) 30, 31

Cohen v. ConAgra Brands, Inc., 16 F.4th 1283 (9th Cir. 2021) 18

Commonwealth Sch., Inc. v. Commonwealth Acad. Holdings LLC, 994 F.3d 77 (1st Cir. 2021) 6

ConnectU LLC v. Zuckerberg, 522 F.3d 82 (1st Cir. 2008) 17, 28, 41

Cullinane v. Uber Techs., Inc., 893 F.3d 53 (1st Cir. 2018) 48, 54

Erickson v. Pardus, 551 U.S. 89 (2007) 30

Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72 (1st Cir. 2009) 30, 32, 35, 49

First Options of Chi., Inc. v. Kaplan, 514 U.S. 938 (1995) 46, 54

Foman v. Davis, 371 U.S. 178 (1962) 13, 17, 19, 21, 25-28, 41

Glassman v. Computervision Corp., 90 F.3d 617 (1st Cir. 1996) 18, 22, 24

Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287 (2010) 46, 51, 54

Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79 (2000) 47

Haines v. Kerner, 404 U.S. 519 (1972) 56, 61

Harriman v. Hancock Cnty., 627 F.3d 22 (1st Cir. 2010) 49

Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12 (1st Cir. 2001) 18, 22

Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ., 209 F.3d 18 (1st Cir. 2000) 56

John's Insulation, Inc. v. L. Addison & Assocs., Inc., 156 F.3d 101 (1st Cir. 1998) 6, 17

Kauders v. Uber Techs., Inc., 486 Mass. 557 (2021) 48, 51, 54

Lawes v. CSA Architects & Eng'rs LLP, 963 F.3d 72 (1st Cir. 2020) 32

LeBlanc v. Unifund CCR Partners, 601 F.3d 1185 (11th Cir. 2010) 39

Liteky v. United States, 510 U.S. 540 (1994) 57

Mizzaro v. Home Depot, Inc., 544 F.3d 1230 (11th Cir. 2008) 18

Morgan v. Sundance, Inc., 596 U.S. 411 (2022) 14, 44, 46, 47, 53, 54

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983) 47

Nikitine v. Wilmington Trust Co., 715 F.3d 388 (1st Cir. 2013) 18

Ouadani v. TF Final Mile LLC, 876 F.3d 31 (1st Cir. 2017) 47

Palmer v. Champion Mortgage, 465 F.3d 24 (1st Cir. 2006) 18

Plymouth Cty. v. Merscorp, Inc., 774 F.3d 1155 (8th Cir. 2014) 18

Resolution Trust Corp. v. Gold, 30 F.3d 251 (1st Cir. 1994) 18, 22

Smith v. Transworld Sys., Inc., 953 F.2d 1025 (6th Cir. 1992) 40

Tang v. Citizens Bank, N.A., 821 F.3d 206 (1st Cir. 2016) 29

United States v. Robin, 553 F.2d 8 (2d Cir. 1977) 62

United States v. Sepulveda, 15 F.3d 1161 (1st Cir. 1993) 56, 61

Wilson v. Bradlees of New Eng., Inc., 250 F.3d 10 (1st Cir. 2001) 32

**Statutes**

15 U.S.C. § 1681s-2(b) 24, 41

15 U.S.C. § 1692e 30, 39

15 U.S.C. § 1692g(b) 31, 37, 38, 40

15 U.S.C. § 1692k 31

| | |
|---|---|
| 28 U.S.C. § 1291 | 5 |
| 28 U.S.C. § 1331 | 5 |
| 28 U.S.C. § 1367 | 5 |
| 28 U.S.C. § 1441 | 5 |
| 28 U.S.C. § 2106 | 5, 9, 61, 63 |
| Mass. Gen. Laws ch. 93A | 5, 9, 16, 24, 40-42 |

**Rules and Regulations**

| | |
|---|---|
| Fed. R. App. P. 4(a)(1)(A) | 5, 6 |
| Fed. R. App. P. 32(a) | 5, 64 |
| Fed. R. Civ. P. 9(b) | 5, 25 |
| Fed. R. Civ. P. 12(b)(6) | 5, 18, 22, 24, 29, 30, 42 |
| Fed. R. Civ. P. 15(a)(2) | 5, 16, 41 |
| Fed. R. Civ. P. 15(c) | 5, 41, 42 |
| Fed. R. Civ. P. 26(a) | 5, 12, 32, 49, 59 |
| Fed. R. Civ. P. 37(c)(1) | 5, 8, 29, 30, 32, 33, 35, 42, 49, 59 |
| Fed. R. Civ. P. 55(b)(2) | 5, 58 |
| Fed. R. Civ. P. 56 | 5, 28-31, 39, 41-43 |
| 940 CMR 7.00 et seq. | 5, 9, 11, 16, 24, 31, 37, 38, 40-42 |

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331 because

Plaintiff's claims arise under the Fair Debt Collection Practices Act, 15 U.S.C. §

1692 et seq., and the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. The

action was removed from the Massachusetts Superior Court, Middlesex County,

under 28 U.S.C. § 1441, and the district court exercised supplemental jurisdiction

over Plaintiff's related state-law claims under 28 U.S.C. § 1367.

This Court has jurisdiction under 28 U.S.C. § 1291. On March 18, 2026, the

district court resolved every claim it retained: it granted summary judgment to

CRM (ECF 83) and denied leave to amend (ECF 84) because the Comcast

defendants were in arbitration (ECF 72) and CRM had been dismissed. Nothing remained to adjudicate. This Court docketed March 18, 2026 as the judgment date, and Plaintiff timely appealed on April 15, 2026 (ECF 85), within Rule 4(a)(1)(A)'s thirty days.

The March 18 disposition was the product of interlocking orders. ECF 84 rests on ECF 83 and ECF 72; ECF 83 rests on the denial of amended claims and defers "[t]he validity of the information provided by Comcast" to compelled arbitration. (ECF 83 at 9 n.9). The antecedent arbitration order (ECF 72) and reconsideration denial (ECF 82) therefore merge into the final disposition. John's Insulation, Inc. v. L. Addison & Assocs., Inc., 156 F.3d 101, 105 (1st Cir. 1998); Commonwealth Sch., Inc. v. Commonwealth Acad. Holdings LLC, 994 F.3d 77, 82 (1st Cir. 2021). The administrative stay does not postpone finality because, after arbitration was compelled and CRM dismissed, no claim remained for the district court to adjudicate. The challenged orders and key excerpts are at Add. 2-38.

## STATEMENT OF THE ISSUES

**Figure 1. Relationship Among the Issues Presented**



The four sets of issues presented in this appeal present, as a preliminary matter, a challenge to the circularity of the arguments at the core of the three main orders (Issues I, II, and III) appealed. They articulate their interlocking nature, against the cumulative procedural background of one-directional procedural rulings (Issue IV). They are as follows:

1. Whether the district court abused its discretion in denying leave to amend (ECF 84) in a two-paragraph order with no Rule 15 analysis; by applying a heightened post-summary-judgment standard although discovery was stayed and the filing met a court-set deadline; and by misstating the amendment history, including that ECF 15 gave no explanation and that ECF 66 was a "Second Amended Complaint," though no amended complaint had been allowed. Reversal would require proceedings on, or reconsideration in light of, the proposed Amended Complaint. (Primary issue.) See Add. 13, 22-27.

2. Whether the grant of summary judgment to CRM (ECF 83) must be reversed where the court evaluated pleading sufficiency rather than record disputes, relied on an undisclosed and untested affidavit it should have excluded in its (ECF 53) ruling on the Plaintiff's (ECF 45) motion to strike and opposition (ECF 60) under Rule 37(c)(1), and disregarded documentary evidence — including CRM's own interrogatory admission of a "credit reporting hold" — that created genuine disputes of material fact. See Add. 2-12, 18, 21, 31-33.

3. Whether the order compelling arbitration (ECF 72) and the denial of reconsideration (ECF 82) must be reversed where the court resolved the gateway question of contract formation by applying the presumption and burden that govern only the scope of a concededly formed agreement, and

where Comcast never proved that Plaintiff assented to any arbitration agreement as to either the 2021 Samsung Galaxy account or the 2024 Moto G 5G transaction. See Add. 14-15, 34-38.

4. Whether the cumulative effect of the district court's one-directional procedural rulings reinforces the case for vacatur and remand, and, in the alternative, warrants reassignment on remand under 28 U.S.C. § 2106.

## STATEMENT OF THE CASE

This consumer-protection action arises from Comcast's billing and collection of a debt Plaintiff disputes ever owing, and from the credit-reporting and collection conduct that followed. Plaintiff Philibert Kongtcheu, proceeding pro se, brought claims under the FDCPA and FCRA, and under Massachusetts General Laws chapter 93A and 940 CMR 7.00, against Comcast Corporation, several individual Comcast representatives, and Credence Resource Management, LLC (CRM), the debt collector Comcast retained. CRM removed the case from Middlesex Superior Court to the District of Massachusetts.

The procedural history is detailed in Issue I. In brief: after CRM answered and Comcast initially defaulted, Plaintiff moved for partial summary judgment against CRM and default judgment against Comcast (ECF 19). The court set aside Comcast's default (ECF 37), Comcast moved to compel arbitration (ECF 58), and

the court compelled arbitration on December 30, 2025 (ECF 72). After Comcast's October 30 discovery disclosed key identities and entities, Plaintiff obtained a December 17 amendment deadline (ECF 64) and filed ECF 66 on that date. See Add. 15, 17, 20, 25-27.

On March 18, 2026, the district court entered final judgment. It granted summary judgment to CRM (ECF 83) and, in a two-paragraph ruling, denied leave to amend (ECF 84). It earlier denied reconsideration of the arbitration order (ECF 82). This appeal followed.

In denying leave, ECF 84 misstated the amendment history. It said ECF 15 "did not include . . . an explanation for why the amendment was necessary." But ECF 15 was an eight-page motion explaining that amendment was needed to cure ECF 11's defects: inadequately named individual defendants and missing personal-capacity allegations. (ECF 15 at 1). ECF 16 denied the motion "without prejudice to refiling," faulting the absence of a complete proposed amended complaint. See Add. 13, 16, 22-24.

ECF 84 also repeatedly called the (ECF 66-1) December 17, 2025 filing a "*Second Amended Complaint*," although no amended complaint had ever been filed or allowed. See Add. 13, 25-27.

**STATEMENT OF FACTS**

**The Samsung Galaxy account and its cancellation.** Plaintiff opened an Xfinity Mobile line for a Samsung Galaxy device in or about May 2021. On June 19, 2024, Plaintiff cancelled that line through an Xfinity Mobile chat with a representative identified only as "Bhavya." *(ECF 19-2)*. During the same chat, Comcast offered Plaintiff a Moto G 5G device; Plaintiff declined unequivocally, writing at 4:11 p.m., "NO! VOID ANY CONTRACT ASSOCIATED WITH IT PLEASE!" The representative confirmed cancellation of the Moto G 5G order at 4:30 p.m. *(ECF 19-2)*. Plaintiff never activated or used any Moto G 5G device or service. *(ECF 19-2; ECF 19-3; ECF 19-4)*.

**The disputed balance and its referral to CRM.** Notwithstanding the cancellation, Comcast generated a balance and, after Plaintiff disputed it, referred the account to CRM for collection. CRM sent collection communications, Plaintiff sent a certified cease-and-desist letter dated November 4 and CRM responded in a letter dated November 21, 2024 asserting the debt was "valid" but enclosing none of the documentation required by 940 CMR § 7.08(2)(d). Plaintiff disputed the debt in writing, and through the consumer reporting agencies. The dispute coincided with a Wells Fargo credit denial dated November 19, 2024 and documented deterioration in Plaintiff's credit. *(ECF 46-1; ECF 60-1)*.

**CRM's own records contradict its litigating positions.** CRM's internal account records reflect continued activity after the cease date, including entries dated

January 13, and an April 28, 2025 mailed collection letter. *(ECF 45-1)*. In response to a court-authorized follow-up interrogatory, CRM admitted that the notation "M2Hold" in its records "represents a credit reporting hold is in place." *(ECF 81)*. And CRM's account notes record that, in June 2025, Comcast confirmed the balance was "invalid," that "[c]harges [were] nullified through valid billing dispute," and that "[a] credit of $409.56 ha[d] been applied." *(ECF 45-1; ECF 54)*. See Add. 31-33.

**The witnesses the defendants never disclosed.** To obtain summary judgment, CRM relied on the declaration of Denise Lewis — a witness CRM never identified in its Rule 26(a)(1) disclosures, and whose declaration CRM reused from a different lawsuit, *Wilson v. Credence Resource Management, LLC*, preserving the prior plaintiff's name. *(ECF 60-4; ECF 75)*. To compel arbitration, Comcast relied on the declaration of Colin Padgett — likewise never disclosed — submitted on behalf of a non-party entity and asserting, contrary to Comcast's own records, that Plaintiff used the service until September 2024. *(ECF 58-1; ECF 78)*. See Add. 21, 34-36.

**The disposition.** The district court granted summary judgment to CRM, denied Plaintiff leave to amend, compelled arbitration of the Comcast claims, and denied reconsideration. The legal and record bases for each ruling are addressed in the Argument.

## SUMMARY OF THE ARGUMENT

Every challenged order in this appeal depended on a single premise: that the original Complaint remained the operative pleading after Plaintiff had timely sought leave to amend, on a deadline the district court itself set, using information obtained through discovery the court itself had authorized him to obtain, and submitted a proposed amended complaint (ECF 66-1). That premise was the product of legal error, and correcting it unwinds the orders below.

Issue I (primary). ECF 84 denied amendment in two paragraphs with no Rule 15 analysis — no futility, delay, bad faith, or prejudice analysis — contrary to Foman v. Davis. It also misstated the history: ECF 15 did explain why amendment was needed, and ECF 66 was not a "Second Amended Complaint" because no amendment had been allowed. ECF 83's separate reasoning applied a heightened post-summary-judgment standard, but discovery had been stayed, and ECF 66 was filed on a court-set deadline. Because the proper Rule 15 disposition would make ECF 66-1 the operative pleading, reversal of ECF 84 destabilizes both rulings predicated on the original Complaint.

**Issue II.** As a consequence of the reversal of ECF 84, the summary judgment (ECF 83) for CRM would also have to be reversed and reconsidered against the proposed amended complaint (ECF 66-1). Independently, ECF 83 must be reversed because the court tested the sufficiency of Plaintiff's allegations rather than the existence of

record disputes; it rested its findings on the undisclosed Lewis affidavit that Rule 37(c)(1) required it to exclude; and it disregarded documentary evidence — including CRM's own admission of a "credit reporting hold" and its own record that the debt was nullified as invalid — that created genuine disputes of material fact.

**Issue III.** As a consequence of the reversal of ECF 84, the arbitration order (ECF 72) would also have to be reversed and reconsidered against the proposed amended complaint (ECF 66-1). Independently, the arbitration order must also be reversed. The district court compelled arbitration without ever finding that Plaintiff agreed to arbitrate, resolving the gateway question of contract formation by invoking the presumption and burden that govern only the scope of a concededly formed agreement. *Morgan v. Sundance* forbids that arbitration-preferring shortcut. Comcast bore the burden of proving assent and offered only a generic specimen contract and a procedurally barred, self-contradicted declaration — proving assent to neither the 2021 Samsung Galaxy account nor the 2024 Moto G 5G transaction that Plaintiff expressly voided and never used.

**Issue IV.** Finally, the cumulative, one-directional pattern of the district court's procedural rulings — excusing the represented defendants' disclosure failures while holding the pro se Plaintiff to the strictest deadlines — denied even-handed

process and reinforces the grounds for vacatur of ECFs 84, 83, 82, and 72, and, in the alternative, supports reassignment on remand.

The unifying remedy is reversal of ECF 84, with orders for reconsideration of ECF 83 and ECF 72 against the Amended Complaint as the operative pleading.

Because this appeal presents significant questions concerning Rule 15 amendment standards, appellate review of arbitration orders following entry of final judgment, and the interaction between amendment, arbitration, and summary judgment rulings arising from a common procedural record, Appellant respectfully requests oral argument.

**ISSUE I**

**THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING LEAVE TO AMEND THE COMPLAINT (ECF 84), AND THAT ABUSE OF DISCRETION INFECTS THE GRANT OF SUMMARY JUDGMENT TO CRM (ECF 83) AND THE ORDER COMPELLING ARBITRATION (ECF 72 & 82)**

**Introduction: The Interlocked Orders Now Before This Court**

Every challenged order in this appeal depended on treating the original Complaint as the operative pleading after Plaintiff had timely sought leave to amend, on a

deadline the district court itself set, using information obtained through discovery the court itself had authorized him to obtain. That single thread ties the appeal together.

This appeal therefore does not present three independent rulings for piecemeal review. It presents a mechanically interlocked sequence of three orders, each turning on the same operative-pleading question: whether the proposed Amended Complaint (ECF 66-1) supersedes the original Complaint as the controlling pleading.

The procedural sequence is undisputed. CRM argued that Plaintiff failed to plead Massachusetts and FCRA theories. (ECF 41 at 5). Plaintiff responded by asking that the Complaint "be deemed amended nunc pro tunc under Fed. R. Civ. P. 15(a)(2) and 15(c)." (ECF 46 at 2). The court extended the amendment deadline to December 17, 2025 (ECF 64), and Plaintiff timely filed ECF 66 and ECF 66-1. See Add. 18, 20, 25-28.

On March 18, 2026, the district court entered two orders simultaneously. ECF 83 granted summary judgment to CRM. ECF 84 denied leave to amend, in a brief text-only order whose operative rationale was a single sentence: "claims against the original defendants are no longer before this court." Months earlier, on December

30, 2025, the court had entered ECF 72, compelling arbitration of all claims against the Comcast Defendants on the original, pre-amendment Complaint.

The interlocking is structural. ECF 83's denial of the FCRA, c. 93A, 940 CMR 7.00, and IIED claims is *expressly* predicated on the conclusion that those claims "are not alleged in the original Complaint." *(ECF 83 at 4)*. That predicate has force only if the proposed Amended Complaint — which *does* plead those claims — is excluded from the operative pleading; ECF 84 is what produces that exclusion. ECF 72's arbitration analysis is likewise confined to the parties and claims in the original Complaint and would be materially different against the Amended Complaint, which adds individual-capacity Comcast Defendants, the proper Comcast entities, and additional non-arbitrable claims arising from post-cancellation regulatory conduct.

The orders thus share one foundation. Reversal of ECF 84 would require allowing amendment or reconsidering leave under Rule 15; once allowed, "[a]n amended complaint, once filed, normally supersedes the antecedent complaint." ConnectU LLC v. Zuckerberg, 522 F.3d 82, 91 (1st Cir. 2008). ECF 83's predicate would fall, and ECF 72 would require reconsideration against the actual parties and claims. Under merger doctrine, all three orders are before this Court. John's Insulation, Inc. v. L. Addison & Assocs., Inc., 156 F.3d 101, 105 (1st Cir. 1998).

**A. Standard of Review**

The denial of leave to amend implicates three partially overlapping standards, each of which independently requires reversal.

**1. Articulation requirement.** "Outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The First Circuit defers to a denial only "so long as the record evinces an adequate reason." *Nikitine v. Wilmington Trust Co.*, 715 F.3d 388, 390 (1st Cir. 2013); *accord Palmer v. Champion Mortgage*, 465 F.3d 24, 30 (1st Cir. 2006).

**2. Futility review is de novo.** Where a denial rests on futility, this Court reviews de novo, applying the same Rule 12(b)(6) legal-sufficiency standard that governs a motion to dismiss. *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996) ("Review is de novo."). That treatment is uniform across the circuits. *See, e.g., Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1236 (11th Cir. 2008); *Plymouth Cty. v. Merscorp, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014); *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1287 (9th Cir. 2021).

**3. The heightened evidentiary standard requires a procedural trigger not present here.** The "substantial and convincing evidence" standard of *Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006), and *Resolution*

*Trust Corp. v. Gold*, 30 F.3d 251, 253 (1st Cir. 1994), applies only when "leave to amend is not sought until after discovery has closed *and* a summary judgment motion has been docketed." *Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001) (emphasis added). The test is conjunctive, and the discovery prong was not satisfied here because discovery was stayed by court order before its scheduled close.

**B. The District Court's Stated Reasons Cannot Sustain the Denial**

1. ECF 84 itself articulated no Rule 15 reason. Its entire rationale was that "claims against the original defendants are no longer before this court." That procedural conclusion says nothing about futility, delay, bad faith, prejudice, or whether ECF 66-1 lacked substantial and convincing evidence. It is the "outright refusal . . . without any justifying reason" condemned in Foman. 371 U.S. at 182. Plaintiff addresses ECF 83 only because it is the only possible basis for sustaining the denial.

**2. ECF 84 also rested on a materially inaccurate account of the amendment history.** Beyond supplying no Rule 15 analysis, ECF 84 justified the denial on a description of the docket that the record contradicts. The order stated that Plaintiff's August 4, 2025 motion to amend (ECF 15) "*did not include [...] an explanation for why the amendment was necessary*." ECF 15 was an eight-page

motion devoted to explaining why amendment was necessary. It stated that the motion was *"grounded in the Court's order that denied default judgment as to the individual defendants on the basis that they were 'inadequately named'" and that* Plaintiff *"failed to 'allege any action taken by these defendants in their personal capacities.'"* (ECF 15 at 1). Under headings titled "Basis for Amendment" and "Justice Requires Leave to Amend," the motion explained that amendment would provide descriptive identifiers for the individual representatives, seek discovery to establish their full identities, detail their personal-capacity conduct, preserve the defaulted allegations against Comcast Corporation, and add related parties or claims arising from the same operative facts. (ECF 15 at 2–7). The contemporaneous order confirms the point. ECF 16 denied the motion *"without prejudice to refiling,"* and its instruction that *"To amend the Complaint, plaintiff Philibert Kongtcheu must file a motion to amend explaining why the amendment is necessary. Kongtcheu must attach his proposed Amended Complaint to the motion for the court to assess it (sic) viability in deciding the motion. As the Amended Complaint replaces the original, it must be complete."* ECF 84 retroactively converted that forward-looking instruction into a backward-looking deficiency finding the contemporaneous order never made. ECF 84's statement that ECF 15 supplied no *"explanation for why the amendment was necessary"* cannot be reconciled with ECF 15 itself, which devoted multiple pages to that explanation.

The same materially inaccurate account underlies the signed order entered the same day: ECF 83's footnote 5 likewise states that the August 4 motion "d*id not include a proposed Amended Complaint or an explanation for why the amendment was requested.*" (ECF 83 at 3 n.5). Because the identical description appears in both orders entered on March 18, 2026, the inaccurate account of ECF 15 was not a stray phrase in a text-only docket entry but a materially inaccurate premise shared by both rulings. See Add. 13, 16, 22-24; ECF 83 n.5 is reproduced at Add. 4.

ECF 84 compounded the error by repeatedly characterizing the December 17, 2025 filing as a "*Second Amended Complaint.*" No amended complaint had ever been filed or allowed. ECF 15 was a motion for leave that ECF 16 denied without prejudice; no amended pleading entered the docket thereafter. The December 17 filing was therefore Plaintiff's first proposed Amended Complaint, not a second. The label is not a matter of style: it recast a single, court-authorized proposed amendment into a pattern of successive, repetitive pleading — a consideration (repeated failure to cure) that bears directly on a Rule 15 denial. *Foman*, 371 U.S. at 182.

These inaccuracies matter because a discretionary ruling cannot rest on a mistaken view of the record it purports to describe. The amendment history, stated accurately, shows diligence rather than delay: Plaintiff first sought leave on August

4, 2025, two weeks after the court identified the naming and personal-capacity defects in ECF 11; the court denied that motion without prejudice for want of an attached pleading; Plaintiff obtained the representatives' identities only through Comcast's October 30, 2025 production; and he filed the complete proposed Amended Complaint on December 17, 2025, the date the court set in ECF 64. An order that describes that sequence as an unexplained, successive amendment effort does not supply the reasoned basis that *Foman* requires. 371 U.S. at 182.

**3. ECF 83's retrospective reasoning fails on every prong.**

*(a) Wrong legal standard.* ECF 83 invoked the heightened *Adorno*/*Gold* standard because "the bar for a plaintiff tendering an amended complaint is higher after a motion for summary judgment has been filed." *(ECF 83 at 4)*. But that standard applies only to an "eleventh hour" amendment "tendered . . . to fend off summary judgment." *Adorno*, 443 F.3d at 126; *Resolution Trust Corp. v. Gold*, 30 F.3d at 253–54 (heightened standard applied where the movant sought amendment *after missing the summary-judgment opposition deadline*). Plaintiff's posture was the opposite: he filed on December 17, 2025 — the date the court set in ECF 64 — three months *before* the summary-judgment ruling, prospectively and after newly disclosed evidence made specific pleading possible. *Glassman* itself distinguished *Gold* from forward-looking amendment. 90 F.3d at 623. The court here invoked

*Gold*'s evidentiary standard while performing no Rule 12(b)(6) futility analysis at all. See Add. 5, 20, 25-27.

The conjunctive *Hatch* trigger independently defeats the heightened standard. Discovery had not closed; CRM moved to stay all discovery deadlines on January 30, 2026 (ECF 73), and the court granted the stay (ECF 74) before the scheduled cutoff. The rationale for the *Adorno*/*Gold* rule — preventing amendment from substituting for evidentiary development that discovery should have supplied — cannot apply where the defendant obtained a stay of the very discovery the rule contemplates.

In any event, neither the ECF 83 nor the ECF 84 order explains how the proposed amendment (ECF 66-1) lacks substantial and convincing evidence.

(b) The "late filing" prejudice finding is untenable. ECF 83 cited "the prejudice inherent in [the] late filing" while acknowledging that the court had extended the amendment deadline to December 17, 2025 and that Plaintiff met it. (ECF 83 at 3 n.5, 4). A court-deadline filing is not late. Nor was there record prejudice: the theories had been before the parties since ECF 46, two months earlier. Cf. Acosta-Mestre v. Hilton Int'l of P.R., 156 F.3d 49, 52 (1st Cir. 1998). If any strategy shifted, it was Plaintiff's, after ECF 37 set aside the Comcast default entered in ECF 11. See Add. 4-5, 17-18, 20, 25-28.

*(c) The "lack of substantial and convincing support" finding is wrong on the record.* Even if the heightened standard applied, the proposed Amended Complaint was supported by extensive contemporaneous documentation, including CRM's own internal account-log entries (ECF 45-1) contradicting the Lewis declaration, the Wells Fargo credit denial of November 19, 2024 (ECF 46-1 Ex. A), the FICO deterioration history (ECF 60-1 Ex. A), and Comcast's COMCAST-00032 production documenting the June 23, 2025 internal approval to remove the disputed account. To call that record lacking "substantial and convincing support" is not a discretionary judgment within reasonable bounds. *Cf. Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 58 (1st Cir. 2006).

## C. The Proposed Amendment Is Not Futile Under the Correct Rule 12(b)(6) Standard

Futility is measured against the Rule 12(b)(6) plausibility standard. *Glassman*, 90 F.3d at 623. The proposed Amended Complaint clears that bar on multiple independent claims:

- **FCRA § 1681s-2(b).** It pleads that CRM is a furnisher; that Plaintiff disputed the debt through Experian; that the CRA notified CRM; and that CRM failed to investigate, allowing the disputed entry to persist despite its

own "M2Never report error: Debtor state MA not allowed to report" notation. *(ECF 66-1 ¶¶ 138–141)*.

- **IIED.** It pleads extreme and outrageous conduct (continued collection after dispute, false validation, fabricated authentication demands), intent or substantial certainty, severe distress documented by November 2025 medical treatment, and causation. *(ECF 66-1 ¶¶ 142–144)*.

- **Chapter 93A and 940 CMR 7.00.** It pleads unfair and deceptive practices, a certified-mail demand (November 4, 2024), failure to make a reasonable settlement offer, and willful conduct; CRM's own call log documents 19 calls, above the cap in 940 CMR 7.04(1)(f). *(ECF 66-1 ¶¶ 145–151)*.

- **Individual-capacity claims (Lissak, Carlos, Arant, Kim).** It pleads, with Rule 9(b) specificity, false statements in Lissak's September 30, 2025 affidavit (ECF 33-1) contradicted by the June 23, 2025 emails on which she was copied (COMCAST-00032); Carlos's supervisory approval with actual knowledge; Arant's October 21, 2024 submissions to the Massachusetts DTC; and Kim's October 25, 2024 FCC submissions with inconsistent cancellation dates and balances.

If any single claim against any single defendant is plausibly pleaded, the categorical "futility" ground collapses. *Foman*, 371 U.S. at 182.

**D. The District Court Itself Created the Need for the Amendment**

What distinguishes this record is that the district court itself identified the very pleading defect the amendment cured, set the deadline by which the cure was filed, and then denied the cure without explanation.

On July 22, 2025, in ECF 11, the court denied default against the five individual Comcast representatives whom Plaintiff could identify in his original Complaint only by their Xfinity Mobile chat handles, ruling them "inadequately named" and faulting Plaintiff for "alleging no action taken by these defendants in their personal capacities." *(ECF 11)*. The court thus flagged — five months before the motion to amend — the precise defect of inadequate naming and missing personal-capacity allegations.

That defect could not be cured on the existing record: the representatives' identities and conduct lay exclusively within Comcast's control. Comcast resisted Plaintiff's discovery on an asserted "personnel records privilege" (M.G.L. c. 149, § 52C) and produced the identifications — "Curtis Xfinity" as Curtis Arant, "Gabrielle K." as Gabrielle Kim, "Cheryl L." as Cheryl Lissak — only on October 30, 2025. Plaintiff then acted promptly: he sought an extension on December 9, 2025 (ECF 63); the court granted it the next day (ECF 64), authorizing filing by December 17; and Plaintiff filed the motion and Amended Complaint on December 17 (ECF 66), pleading each individual by full identity and personal-capacity conduct. When a

court identifies a defect, sets the deadline to cure it, and then denies the cure without articulated reason, it has done the precise thing *Foman* defined as abuse of discretion. 371 U.S. at 182.

**E. The Amendment Cured Defects Identified by Both the Court and the Defendants**

The amendment also answered a second defect the defendants themselves pressed throughout: that Plaintiff had named the wrong Comcast entity. Comcast took that position repeatedly and inconsistently — objecting in discovery that "Comcast Corporation . . . is not the proper party" because Xfinity Mobile services are provided by "Comcast OTR1, LLC" (ECF 66-2 at 72); submitting the Padgett Declaration on behalf of a third entity, "Comcast Cable Communications, LLC" (ECF 58-1 ¶¶ 2–3); and now, in its appellate motion to dismiss, asserting again that "Comcast Corporation . . . is not the proper legal entity" and that "Comcast OTR1, LLC" is the correct one (Mot. to Dismiss at 1 n.1). Across three filings Comcast invoked three different entities and insisted Plaintiff named the wrong one, while never consistently identifying the right one.

The proposed Amended Complaint cured this directly, naming all three entities — Comcast Corporation, Comcast Cable Communications LLC, and Comcast OTR1 LLC d/b/a Xfinity Mobile — together with the individual defendants and a

"Corporation X" placeholder for the vendor Comcast's production identified as employing Representatives X and Bhavya. *(ECF 66-1 ¶¶ 1, 5–7)*. Both the court-identified defect and the defendant-identified defect arose from the same obstacle — Comcast's refusal to disclose, until compelled, the identities of the entities and employees responsible — and the amendment cured both at once, pleading exactly what the court and the defendants had said was missing. An amendment that does so is the heartland of Rule 15, not a candidate for "futility." *Cf. Foman*, 371 U.S. at 182.

**Conclusion of Issue I**

The denial of leave to amend cannot be sustained. ECF 84 contains no Rule 15 analysis, violating *Foman*'s articulation requirement. It also rested on a materially inaccurate account of the amendment history: (i) ECF 15 did explain why amendment was necessary, and (ii) the December 17 filing was not a "Second Amended Complaint" because no amended complaint had ever been filed or allowed. Plaintiff complied with every amendment deadline, filing on the court-set date in ECF 64, so "late filing" prejudice is untenable. The amendment rested on discovery-generated evidence and cured defects previously identified by both the court (ECF 11) and the defendants (ECF 41, the Padgett Declaration, discovery responses, and the appellate motion to dismiss) — the heartland purpose of Rule 15. And reversal of ECF 84 necessarily requires vacatur of ECF 83 and ECF 72,

because both were predicated on the original Complaint as the operative pleading. *ConnectU*, 522 F.3d at 91. This Court should reverse ECF 84 and remand.

**ISSUE II**

**THE GRANT OF SUMMARY JUDGMENT TO CRM (ECF 83) RESTS ON A PROCEDURALLY COMPROMISED RECORD AND MISAPPLIES RULE 56**

**Introduction**

ECF 83 rested on an evidentiary foundation that four sequential procedural rulings had compromised before the order was entered. First, the court denied (ECF 53) Plaintiff's motion to strike the undisclosed Lewis Declaration on the wrong legal theory, never addressing the Rule 37(c)(1) witness-disclosure requirement. Second, the court limited Plaintiff's discovery because it credited CRM's sworn assertions of no credit-reporting and no further collection — assertions that CRM's own subsequent interrogatory admission directly contradicted. Third, the court stayed the remaining discovery that would have tested the Lewis affidavit, including the Lewis deposition Plaintiff had noticed in November 2025, long before the stay was sought, and which CRM had ignored. Fourth, the court's own *sua sponte* order recognized that the Lewis Declaration was copied from a prior case — yet treated this as a naming error requiring a revised affidavit rather than as the fundamental

unreliability warranting exclusion, as repeatedly flagged in ECF 45, ECF 59 and ECF 60.

ECF 83 then relied on the resulting affidavit to establish a summary judgment record, while applying the Rule 12(b)(6) pleading standard rather than Rule 56's genuine-dispute inquiry, and ignoring documentary evidence — including CRM's own records — that refuted the affidavit's central claims.

## A. Standard of Review

This Court reviews a grant of summary judgment de novo, applying the same standard as the district court. *Tang v. Citizens Bank, N.A.*, 821 F.3d 206, 215 (1st Cir. 2016). Summary judgment is proper only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the initial burden, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); the court may not weigh evidence or make credibility determinations, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Pro se pleadings are construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Prior interlocutory rulings merge into the final judgment and are reviewable on this appeal; evidentiary and Rule 37(c)(1) rulings are reviewed for abuse of discretion, but rulings resting on an

error of law are not protected by that standard. *Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 77 (1st Cir. 2009).

## B. The Lead Error: The Court Evaluated Pleading Sufficiency Rather Than Record Disputes

The district court resolved CRM's summary-judgment cross-motion by asking whether Plaintiff had stated his claims, not whether the record disclosed genuine disputes of fact about them. That is the Rule 12(b)(6) question, not the Rule 56 question, and the court's own language reflects the substitution at each operative holding:

- On § 1692e(2)(A): "Kongtcheu **has not sufficiently alleged** a violation." (ECF 83 at 9) (emphasis added).

- On § 1692g(b) and 940 CMR § 7.08: "Kongtcheu **has not alleged** violations." (ECF 83 at 10) (emphasis added).

- On § 1692k joint liability: "the court does not **find** the underlying violations." (ECF 83 at 10 n.11).

This is not a quibble over a single imprecise word. Across every operative FDCPA holding, the court measured the *sufficiency of Plaintiff's allegations* rather than asking whether, drawing all reasonable inferences in Plaintiff's favor, the

summary-judgment record disclosed a genuine dispute of material fact on each element. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The consequence is substantive: by testing pleading sufficiency, the court relieved CRM — the cross-movant — of its Rule 56 burden to demonstrate the *absence* of any genuine factual dispute, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and never reached the documentary record that, as Sections C and D show, squarely contradicted CRM's factual premises. Applying the wrong analytical framework on a dispositive motion is reversible error independent of the evidentiary defects addressed below.

## C. The Summary Judgment Record Rested on an Affidavit the Court Should Have Excluded

ECF 83's factual findings derive almost entirely from the affidavit of Denise Lewis. (ECF 83 at 5–7, citing "Lewis Aff. [Dkt # 77]"). The path from that affidavit's appearance in October 2025 to its reliance by the court in March 2026 runs through four procedural rulings that prevented meaningful examination of it .

**C.1 — Lewis was never disclosed, triggering mandatory exclusion.** CRM never identified Denise Lewis in its Rule 26(a)(1) initial disclosures, its interrogatory responses, or any Rule 26(e) supplementation. Plaintiff raised this squarely, below. *(ECF 45 at 2–3; ECF 59 at 2–4; ECF 60 at 4–6)*. Under Rule 37(c)(1), a party that

fails to disclose a witness "is not allowed to use that . . . witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The First Circuit treats this sanction as "self-executing" and the "required sanction in the ordinary case." *Wilson v. Bradlees of New Eng., Inc.*, 250 F.3d 10, 21 (1st Cir. 2001); *Esposito*, 590 F.3d at 77; *Lawes v. CSA Architects & Eng'rs LLP*, 963 F.3d 72, 90 (1st Cir. 2020). The exceptions — "substantially justified" or "harmless" — require affirmative findings on the record. *Esposito*, 590 F.3d at 78.

**C.2 — ECF 53 applied the wrong legal framework.** When Plaintiff moved to strike the Lewis Declaration (ECF 45), the court denied the motion on October 27, 2025, reasoning that "CRM attached these documents to a court filing — there is no evidence that the documents were purposefully withheld." (ECF 53). The court analyzed the motion under Fed. R. Civ. P. 26(b)(1) (scope of discovery) and 26(e) (duty to supplement). Those rules govern document production; they do not govern witness disclosure. Rule 37(c)(1) separately prohibits use of an *undisclosed witness* to supply evidence on a motion, and that prohibition is automatic regardless of whether the non-disclosure was "purposeful." The court's "no purposeful withholding" finding addressed a standard that does not appear in Rule 37(c)(1). That analytical error carried forward into ECF 83, which said nothing about Rule 37(c)(1), Lewis's non-disclosure, or the ECF 53 framing.

**C.3 — ECF 55 limited discovery based on sworn assertions that ECF 81 later materially undermined.** On November 7, 2025, the court granted Plaintiff's motion to compel only in part, limiting production to CRM's call logs, specifically because CRM's sworn statements established "that it did not 'credit report' Kongtcheu's account, and after its November 21, 2024 letter, 'made no further attempts to collect the debt.'" (ECF 55). The court credited those assertions as the factual predicate for declining further discovery. Months later, in response to the follow-up interrogatories the court itself authorized (ECF 53), CRM admitted that the notation "M2Hold" in its account records for Plaintiff "represents a credit reporting hold is in place." (ECF 81). A reasonable factfinder could infer from CRM's admission that a "credit reporting hold is in place" that the account had entered CRM's credit-reporting workflow, or at minimum that CRM maintained credit-reporting capability and status information for the account. That admission contradicts the categorical "no credit reporting" premise enough to create a genuine dispute. The sworn statement that CRM "did not credit report" the account — which ECF 55 accepted to limit discovery — was thus directly contradicted by CRM's own subsequent interrogatory admission. The court in ECF 83 relied on the same false assertion (citing Lewis for "CRM denies reporting Kongtcheu to any credit agency," ECF 83 at 7) while ignoring the M2Hold admission entirely. See Add. 8, 19, 33.

**C.4 — ECF 74 froze the deposition that would have tested the affidavit.** Plaintiff had served a Rule 30(b)(1) notice on November 10, 2025 to depose Denise Lewis and other witnesses. On February 4, 2026, the court granted CRM's motion to stay all pretrial schedule deadlines pending the summary judgment ruling. (ECF 74). Plaintiff was never able to depose Lewis. The Lewis affidavit that ECF 83 relied upon therefore rested on no cross-examination, no opportunity to probe the account records, and no means to explore the inconsistencies CRM's own documents disclosed.

**C.5 — The court's own *sua sponte* order (ECF 75) recognized the template problem.** On February 25, 2026, the court issued a *sua sponte* order noting that "CRM filed an affidavit by Denise Lewis . . . [t]his affidavit misidentifies the plaintiff in this case as 'Curtis Wilson.'" (ECF 75). The court ordered a revised affidavit. That order made no reference to Plaintiff's moves to strike in ECF 45, 59 and 60. What the order identified as a "misidentification" was evidence that the declaration was not drafted from the factual specifics of Plaintiff-Appellant's account: CRM had reused a template Lewis declaration from *Wilson v. Credence Resource Management, LLC*, No. 1:24-cv-12900-IT (D. Mass.), deploying it here with minimal alteration. ECF 60-4 shows both case stamps on the same declaration, signed April 28, 2025 — months before CRM filed its cross-motion here. CRM therefore knew Lewis was its evidentiary witness from the outset and

chose not to disclose her. The court's ECF 75 order constitutes an independent, court-generated recognition that the Lewis Declaration was not an original affidavit specific to this case. Yet the court treated the problem as a naming error and accepted the revised affidavit (ECF 77), filed the same day Lewis re-signed, without addressing whether the template reuse defeated the "substantially justified or harmless" exceptions to Rule 37(c)(1).

**Consequence:** By March 18, 2026, the procedural record had made clear that Lewis was undisclosed, her declaration was reused from another case, the sworn assertions the court used to limit discovery were contradicted by CRM's own interrogatory, her deposition had been forestalled by a CRM-requested stay, and the court had recognized — without drawing consequences — that the affidavit bore a prior plaintiff's name. ECF 83 nonetheless relied on Lewis to establish the absence of a genuine dispute on every FDCPA claim, without uttering the words "Rule 37(c)(1)" or making any finding of substantial justification or harmlessness. That is an error of law warranting reversal. *Esposito*, 590 F.3d at 79.

**D. The Court Ignored Documentary Evidence — Including CRM's Own Admissions — That Created Genuine Disputes**

ECF 83 found that "there is no dispute of the material facts." (ECF 83 at 10). The record , including CRM's own documents, establishes multiple genuine disputes (ECF 60-1).

**D.1 — The M2Hold admission.** CRM's own Response to Interrogatory No. 3 (ECF 81) admits "M2Hold represents a credit reporting hold is in place." A credit-reporting hold can exist only if an account is in the credit-reporting system. This is a party admission that directly contradicts the court's finding of "no dispute" on credit reporting. It stands unrebutted in the record and creates a genuine dispute of material fact on the FCRA and credit-reporting components of Plaintiff's claims.

**D.2 — The June 2025 "invalid debt" entry.** CRM's account notes (ECF 45-1) contain an entry from late June 2025 -– after receipt of Plaintiff's Superior Court complaint -– stating "the balance on this account is invalid, Collections will cease. Charges nullified through valid billing dispute. A credit of $409.56 has been applied." *(ECF 54 Interrog. No. 5)*. Lewis's affidavit asserts that "Xfinity Mobile notified CRM the charges were valid" on November 19, 2024. (ECF 77 ¶ 13). Both cannot be true: a debt confirmed invalid and nullified by Comcast in June 2025 was not validly validated in November 2024. The court accepted the November 19, 2024 "validation" claim while the contemporaneous Comcast record refuting it was in the record before the court.

**D.3 — The continued account-activity entries, and the Order's contrary finding.** CRM's own Account Information log records post-cease account activity, including entries dated January 13, 2025 ("CLTCRD") and April 28, 2025 re-issuing Plaintiff's address as "BILL_TO_ADDRESS" and "CES_CUSTOMER," together with "REGF" and "RGVSIF" follow-up codes (ECF 45-1; ECF 60-1 at 3–4) — entries identical in form to those recording CRM's original November 2024 collection letter. Plaintiff placed this evidence squarely before the district court, arguing that the April 28, 2025 entries reflect a renewed collection communication issued after his November 4, 2024 cease-and-desist and without the validation required by 15 U.S.C. § 1692g(b) and 940 C.M.R. § 7.08(2) (ECF 59 at p. 3 "Apr. 28, 2025: Collection letter sent to Plaintiff BILL_TO_ADDRESS and CES_CUSTOMER, exactly as the October 23 letter"; ECF 60 at p. 10 "sent additional letters"). The Order recited these very April 28, 2025 entries (ECF 83 at 7), yet two pages later found that "Kongtcheu does not provide evidence that CRM engaged in additional communication with him after receiving his letter asking that CRM cease its collection efforts," and rested its § 1692g(b) and § 7.08 ruling on that finding (ECF 83 at 10). The Order thus declared absent the same record evidence it had just described. On CRM's cross-motion, that evidence — drawn from CRM's own business records — was required to be credited, with all reasonable inferences drawn in Plaintiff's favor; it establishes at minimum a

genuine dispute as to whether CRM resumed collection after the cease demand, which precludes summary judgment for CRM on the § 1692g(b) and § 7.08 claims. See Add. 8, 10-11, 31-32.

**D.4 — The internal inconsistency.** ECF 83 at page 7 characterizes the credit-reporting issue as a contested factual assertion ("CRM denies reporting Kongtcheu to any credit agency"). Yet page 10 declares there is "[n]o dispute of the material facts." Both cannot be correct. A district court may not grant summary judgment by omitting the non-movant's contrary evidence from its analysis. *Anderson*, 477 U.S. at 255.

**D.5 — Third-party credit-harm evidence.** The Wells Fargo credit denial of November 19, 2024, the Experian record identifying a "Comcast/CRM adverse item," and the documented FICO deterioration in November 2024 and April 2025 — each corresponding to CRM's account-activity windows — are additional documentary contradictions of CRM's "no reporting" position. *(ECF 46-1; ECF 60-1).*

D.6 — The pattern, considered together. The M2Hold admission, June 2025 invalidation, continued-collection entries, credit-reporting inconsistency, and third-party credit-harm evidence all share the same defect: the court credited CRM over contrary documents and drew the inference against Plaintiff. Rule 56 required

the opposite. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Five such departures do not produce a record free of genuine disputes.

**E. The Court Resolved the Debt-Validity Question Against Plaintiff While Deferring It to Arbitration**

The court's § 1692e(2)(A) ruling held that CRM's representation of the debt's "character, amount, and legal status" was "consistent with the information provided to CRM by Comcast," while acknowledging in the same footnote that the validity of that information "will be resolved in the course of the mediation[1]" under ECF 72. (ECF 83 at 9, n.9). Section 1692e(2)(A) is a strict-liability provision; a debt collector's good-faith reliance on its client's information is not a defense. *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 360 (6th Cir. 2012); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010). If the debt was invalid — which CRM's own June 2025 account entry confirms it was — CRM's representation was false under § 1692e(2)(A) regardless of what Comcast told it. The court assumed the debt's validity in the movant's favor, then shipped that question to a forum where CRM is not a party, inverting Rule 56's requirement that inferences favor the non-movant. *Anderson*, 477 U.S. at 255.

---

[1] The court in ECF 83 n.9 refers to its ECF 72 order as an order for "mediation", which is incorrect, as it is an order for **arbitration**

**F. The Court's Reading of § 1692g(b) Is Wrong as a Matter of Law**

ECF 83 treated § 1692g(b) as requiring only the cessation of "additional communication." (ECF 83 at 10). The statute requires cessation of "collection of the debt" — a broader obligation encompassing internal account handling, credit reporting, and follow-up correspondence that fails to provide the required verification materials. 15 U.S.C. § 1692g(b); *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1031 (6th Cir. 1992); *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997). The Massachusetts regulation required, before any resumption, production of "all documents . . . which bear the signature of the debtor and which concern the debt." 940 CMR § 7.08(2)(d). CRM's November 21, 2024 letter enclosed none of those materials. On the verified record, a reasonable jury could find that CRM continued "collection of the debt" without lawful validation, especially in view of the April 28, 2025 record — creating a genuine dispute the court was not permitted to resolve on summary judgment.

**G. The Refusal to Reach the FCRA, c. 93A, 940 CMR 7.00, and IIED Claims Cannot Stand**

The court declined to analyze Plaintiff's additional claims because they were "not alleged in the original Complaint." (ECF 83 at 4, 8 n.8). That predicate is reversible on two independent grounds.

*First*, as Issue I demonstrates, ECF 84's denial of leave to amend was reversible abuse of discretion. Upon allowance of amendment on remand, the Amended Complaint would supersede the original. *ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008). A summary judgment cannot stand on a predicate that the disposition of Issue I removes.

Second, even apart from ECF 84, ECF 46 expressly asked that the Complaint "be deemed amended nunc pro tunc under Fed. R. Civ. P. 15(a)(2) and 15(c)" to include the FCRA, 93A, 940 CMR, and IIED claims. ECF 48 allowed the reply but did not resolve that request. ECF 83 then treated the claims as unpleaded, as if the pending Rule 15(c) request had never existed. Foman required a reasoned ruling, not silence. 371 U.S. at 182. See Add. 18, 28.

In any event, the proper Rule 56 analysis on each additional claim would have precluded summary judgment. The FCRA § 1681s-2(b) claim rests on CRM's failure to investigate the Experian-channeled dispute despite its own "M2Never report error" notation and the M2Hold entry. The c. 93A and 940 CMR claims rest on the documented call frequency and the absent regulatory disclosures. The IIED claim rests on the documented credit-harm cascade and contemporaneous medical and financial injuries. Each turns on disputed material facts the court never examined.

**Conclusion of Issue II**

Six independent grounds each require reversal of ECF 83:

i. The court applied the Rule 12(b)(6) pleading standard to a Rule 56 cross-motion;

ii. The court's findings rested on a Lewis affidavit that Rule 37(c)(1) mandated excluding — an obligation ECF 53 bypassed by applying the wrong legal framework, ECF 74 preserved by staying the deposition, and ECF 75 confirmed by recognizing (without consequence) the affidavit's template origins;

iii. The court ignored CRM's own interrogatory admission that "M2Hold represents a credit reporting hold" — directly contradicting the "no credit-reporting" finding on which both ECF 55 and ECF 83 relied;

iv. The court accepted Lewis's "November 19 validation" claim while CRM's own records show the debt was confirmed invalid and nullified in June 2025;

v. The court resolved the debt-validity question in CRM's favor while simultaneously deferring it to arbitration, inverting Rule 56; and

vi. The court refused to reach FCRA, c. 93A, 940 CMR, and IIED claims despite an unaddressed Rule 15(c) relation-back request pending since October 2025.

The proper remedy is vacatur of ECF 83 and remand for Rule 56 analysis of Plaintiff and CRM's motions, adopting the proposed amended complaint ECF 66-1, under the correct standard, on a record from which the Lewis affidavit is excluded and Plaintiff's documentary evidence is given the inferences to which the non-movant is entitled.

**ISSUE III**

**THE ORDER COMPELLING ARBITRATION (ECF 72) AND THE DENIAL OF RECONSIDERATION (ECF 82) MUST BE REVERSED BECAUSE THE DISTRICT COURT NEVER FOUND — AND COMCAST NEVER PROVED — THAT PLAINTIFF AGREED TO ARBITRATE**

**Introduction**

The district court compelled arbitration without ever finding that Plaintiff agreed to arbitrate anything. It did so by committing two conflations that independently require reversal.

First, the court conflated *formation* with *scope*. Whether an arbitration agreement was ever formed is a gateway question for the court, decided under ordinary state-law contract principles with no thumb on the scale. The presumption favoring arbitration — on which ECF 72 expressly relied — governs only the *scope* of a concededly valid agreement. By resolving a formation dispute with a scope-stage presumption, and by placing the burden on the party resisting arbitration, the court applied precisely the kind of arbitration-preferring rule that *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), forbids.

Second, the court conflated two distinct transactions. Plaintiff's relationship with Comcast comprised (1) a Samsung Galaxy account opened in May 2021 and

cancelled on June 19, 2024 — which Plaintiff acknowledges opening and using, but to whose arbitration clause he never assented and for which Comcast produced no admissible proof of assent; and (2) a Moto G 5G order in June 2024 that Plaintiff expressly voided in real time and never activated or used. ECF 82 collapsed both into a single "opened an account . . . and used Comcast's services" finding that proves neither assent to arbitration nor the existence of the second transaction at all.

On the dispositive formation question, Comcast bore the burden and offered only a generic specimen agreement and a declaration that was procedurally barred, facially defective, and contradicted by Comcast's own records.

## A. Standard of Review

Whether a valid agreement to arbitrate exists is a question of law reviewed de novo. *Air-Con, Inc. v. Daikin Applied Latin Am., LLC*, 21 F.4th 168, 174 (1st Cir. 2021). The denial of reconsideration is reviewed for abuse of discretion, but a reconsideration ruling that rests on an error of law receives no deference. Because the underlying order (ECF 72) and its reaffirmation (ECF 82) turn on legal questions — the framework governing contract formation and the allocation of the burden of proof — review is de novo.

**B. The Court Applied the Wrong Legal Framework: Formation Is a Gateway Question Decided Without Any Presumption Favoring Arbitration**

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). Because arbitration rests on consent, "whether the parties have a valid arbitration agreement at all" is a question "for judicial determination." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943–44 (1995). On that question, courts "should apply ordinary state-law principles that govern the formation of contracts," *id.* at 944, and the federal policy favoring arbitration has no role to play.

The Supreme Court made this explicit in *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287 (2010): the presumption favoring arbitration applies only to disputes over the *scope* of an agreement whose existence is undisputed; "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide," and the policy favoring arbitration cannot substitute for the consent the FAA requires. *Id.* at 296–301. And in *Morgan v. Sundance*, the Court held that "[t]he FAA's policy favoring arbitration does not authorize federal courts to invent special, arbitration-preferring procedural rules"; the federal policy "is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate" —

making such agreements "as enforceable as other contracts, but not more so." 596 U.S. at 418 (cleaned up).

ECF 72 inverted these principles. It relied on the pro-arbitration policy, scope ambiguities, and Green Tree's rule that a resisting party must show claims are unsuitable for arbitration. (ECF 72, citing Moses H. Cone, Ouadani, and Green Tree). Those are scope-stage rules. Green Tree addressed suitability within an undisputed arbitration agreement, 531 U.S. at 91-92; it did not shift the antecedent burden to prove assent. See Add. 15.

On that antecedent question, the burden ran the other way. The party seeking to compel arbitration "bears the burden of demonstrating that a valid agreement to arbitrate exists." *Air-Con*, 21 F.4th at 175. The court's reliance on a scope-stage presumption and a scope-stage burden to resolve a formation dispute is the "arbitration-preferring procedural rule" *Morgan* prohibits, and it is reversible error.

**C. The Agreement's Own Terms Reserve Validity and Formation to the Court**

Even on Comcast's own document, the formation question belonged to the court. The specimen agreement provides, in capital letters: "NOTWITHSTANDING THE FOREGOING, DISPUTES RELATING TO THE SCOPE, VALIDITY, OR ENFORCEABILITY OF THIS ARBITRATION PROVISION WILL NOT BE SUBJECT TO ARBITRATION." (ECF 58-1, Ex. B at 21–22; Add. 37–38). This

carve-out forecloses any suggestion that formation and validity were delegated to the arbitrator; the agreement Comcast invoked expressly assigns those questions to the court. The district court therefore could not avoid deciding formation by deferring to the arbitrator — yet it never actually decided it, resolving the question instead by reflexive application of the pro-arbitration presumption. That was error twice over.

**D. Comcast Failed to Carry Its Burden of Proving Formation**

Measured against the correct standard, Comcast's showing was insufficient as a matter of law.

**D.1 — A generic specimen contract proves nothing about this Plaintiff.**

Comcast's submission consisted of a boilerplate "Xfinity Mobile Customer Agreement" (ECF 58-1, Ex. B) that names no party, bears no signature, and contains no Plaintiff-specific data. Under Massachusetts law, the proponent of an online or form contract must prove that the specific user received reasonable notice of the terms and manifested assent to them. *Kauders v. Uber Techs., Inc.*, 486 Mass. 557, 571–72 (2021); *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 61–64 (1st Cir. 2018) (applying Massachusetts law; arbitration clause unenforceable where the interface did not reasonably communicate the terms or secure assent). Comcast produced no signature, no clickwrap or sign-in-wrap record, no IP or timestamp

log, and no account-level acceptance data — nothing connecting Plaintiff to the specimen's arbitration clause. A "generic form contract paired with a bare-bones declaration" does not satisfy the assent standard. See Add. 34-36.

**D.2 — The sole authenticating declaration was procedurally barred.** Comcast's only evidence of formation was the Declaration of Colin M. Padgett (ECF 58-1). Comcast never disclosed Padgett in its Rule 26(a)(1) initial disclosures — which named only Cheryl Lissak, Curtis Arant, and Gabrielle Kim — and never supplemented under Rule 26(e). *(ECF 78 ¶¶ 14–15)*. The omission was not inadvertent: Comcast announced its intent to compel arbitration on September 30, 2025 (ECF 35 at 7), a month before its October 30 disclosure deadline, yet withheld the identity of the very witness it would use nineteen days later as its sole foundation. Rule 37(c)(1) makes exclusion automatic absent substantial justification or harmlessness, neither of which Comcast showed. *Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 77 (1st Cir. 2009); *Harriman v. Hancock Cnty.*, 627 F.3d 22, 29–32 (1st Cir. 2010) (mandatory disclosure exists to prevent litigation by ambush). ECF 72 relied on the Padgett Declaration without addressing the exclusion argument, and ECF 82 dismissed it on the ground that the court "cannot see any extraordinary impact this omission had." That reverses the Rule 37(c)(1) inquiry: the rule presumes exclusion, and the burden of showing

harmlessness lay with Comcast, not with Plaintiff to show "extraordinary impact." See Add. 14, 17, 34-35.

**D.3 — The declaration was facially defective and contradicted by Comcast's own records.** Even if admissible, the Padgett Declaration could not establish formation. Padgett identifies himself as an employee of "Comcast Cable Communications, LLC" and states that his declaration is submitted in support of that entity's motion (ECF 58-1 ¶¶ 2–3) — but Comcast Cable Communications, LLC is not a party, the named defendant is Comcast Corporation, and the specimen agreement names a third entity, Comcast OTR1, LLC. The declaration attaches no underlying account records. And it asserts that Plaintiff used the service until "September 25, 2024" (ECF 58-1 ¶ 10) — a statement Comcast's own contemporaneous chat transcripts and system emails refute, showing cancellation and deactivation on June 19, 2024. *(ECF 19-2; ECF 19-4)*. A declaration contradicted by the movant's own documentary record on a core fact is entitled to no weight. See Add. 34-36.

**E. The Two Transactions Must Be Distinguished — and Neither Supports Arbitration**

The district court treated Plaintiff's dealings with Comcast as a single, undifferentiated "Xfinity Mobile" relationship. They were not.

**E.1 — The Samsung Galaxy account (May 2021 – June 19, 2024).** Plaintiff acknowledges that he opened a Samsung Galaxy line in or about May 2021 and used that device. But using a mobile device is not the same act as assenting to an arbitration clause. ECF 82's entire formation holding — "Kongtcheu opened an account on May 19, 2021, and used Comcast's services" — rests on exactly that non-sequitur. Account use establishes a service relationship; it does not establish that Plaintiff received reasonable notice of, and manifested assent to, the specific arbitration term. *Kauders*, 486 Mass. at 571–72. Comcast submitted no admissible evidence — by signature, electronic acceptance record, or otherwise — that Plaintiff ever agreed to arbitrate. The opt-out provision on which Comcast relied (ECF 58-1, Ex. B at 6) presupposes the very assent that was never proven: a consumer cannot be charged with failing to opt out of an agreement he was never shown to have entered. See Add. 14, 34-36.

**E.2 — The Moto G 5G order (June 19, 2024).** The conduct that gave rise to this lawsuit concerns a *different* transaction: a Moto G 5G device that Comcast offered during the June 19, 2024 cancellation chat. Plaintiff did not accept it. The verified record shows that at 4:11 p.m. Plaintiff wrote, "NO! VOID ANY CONTRACT ASSOCIATED WITH IT PLEASE!"; that Comcast's representative confirmed cancellation of the Moto G 5G order at 4:30 p.m.; and that Plaintiff never activated or used any Moto G 5G device or service. *(ECF 19-2; ECF 19-3; ECF 19-4).*

There was thus no contract formed as to the Moto G 5G at all — and therefore no arbitration clause to enforce. A device that was offered, expressly refused, and confirmed cancelled in the same conversation cannot supply the consent that arbitration requires. *Granite Rock*, 561 U.S. at 299.

**E.3 — The conflation is outcome-determinative.** By folding both transactions into a single account narrative, the court compelled arbitration of claims arising from a transaction (the Moto G 5G and the post-cancellation billing and collection that followed) for which no agreement of any kind — let alone an arbitration agreement — was ever formed. That is the precise harm the formation inquiry exists to prevent[2].

**F. Reversal of ECF 84 Independently Requires Reconsideration of ECF 72**

As developed in Issue I, the denial of leave to amend (ECF 84) was an abuse of discretion. That error directly infects the arbitration order. The proposed Amended Complaint (ECF 66-1) was filed on December 17, 2025 — before the court entered

---

[2] Subsequent arbitration developments underscore the practical importance of that claim-by-claim distinction, although Plaintiff does not rely on them as an independent basis for reversal. Plaintiff limited his AAA statement of claims to pre–June 19, 2024 Samsung billing claims and expressly reserved arbitrability objections and post–June 19, 2024 claims; Comcast then sought an order requiring Plaintiff to bring all claims in arbitration or be deemed to have abandoned them, a request the arbitrator denied. That sequence confirms why the district court was required to decide formation and scope transaction by transaction, rather than treating every later Comcast-related dispute as part of one undifferentiated arbitrable controversy.

ECF 72 on December 30, 2025[3] — and it reframes Plaintiff's claims as post-termination statutory and tort claims and adds individual defendants (Lissak, Arant, Kim) and additional Comcast entities who are non-signatories to any arbitration agreement and who cannot compel arbitration of claims against themselves. *See* Issue I, *supra*. ECF 72 was entered against the superseded original complaint and never measured against the operative pleading. Upon allowance of amendment after reversal of ECF 84, the Amended Complaint would become operative, and ECF 72 would require reconsideration against it — a point Plaintiff preserved in his motion for reconsideration. *(ECF 78)*. The portions of Issue I establishing the superseding-pleading consequence are incorporated here.

## G. Comcast's Litigation Conduct Independently Supports Reconsideration of Waiver Under Morgan

Independently, Comcast waived any right to arbitrate. It agreed to remove the case to federal court; allowed a default to enter; moved to set aside the default (ECF 33) without asserting arbitration; filed an Answer (ECF 47) raising numerous affirmative defenses but not arbitration; and participated in months of discovery

[3]ECF 82 identifies the order under reconsideration as the court's "12/20/2025 Order." Because Comcast's reply memorandum (ECF 71) was not filed until December 23, 2025, the arbitration order necessarily postdates it. Plaintiff's motion for reconsideration (ECF 78), his AAA initiation filing, and the arbitration initiation letter all consistently refer to December 30, 2025 as the date of ECF 72. The court's reference to "December 20" is a typographical error in the denial order.

and meet-and-confer practice. Only when Plaintiff noticed depositions of Comcast personnel did Comcast — on November 18, 2025 — move to compel arbitration. Under *Morgan v. Sundance*, a court may not condition waiver on a showing of prejudice; the question is simply whether the party "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." 596 U.S. at 419. Comcast's sustained invocation of the judicial process — in the face of this Court's express directive that "the court expects no more delay in this matter" (ECF 38) — satisfies that standard. ECF 72 and ECF 82 did not address the timely raised waiver issue in Plaintiff's ECF 65-1 at p.5 under the *Morgan* standard at all. Additionally, the district court disregarded and never ruled on Plaintiff's cross-motion to compel discovery and sanctions (ECF 65), hence effectively denying it through the entry of the order compelling arbitration (ECF 72),  and that implied denial is likewise challenged within this Issue. This is particularly consequential since this case originates from Comcast's unsupported, yet forceful claims that Plaintiff opened a Moto g 5G XFinity Wireless account that he never did, relentlessly pursued on that basis despite compelling evidence to the contrary, and then defended with an equally unsupported demand for arbitration.

**Conclusion of Issue III**

The district court compelled arbitration without finding that Plaintiff agreed to arbitrate, by applying a scope-stage presumption and burden to a formation

question (*Morgan*, *Granite Rock*, *First Options*); by crediting a generic specimen contract and a procedurally barred, facially defective, and self-contradicted declaration in place of the assent Massachusetts law requires (*Kauders*, *Cullinane*, *Air-Con*); by conflating a 2021 account Plaintiff used with the 2024 Moto G 5G transaction he expressly voided and never used; by overlooking the agreement's own reservation of validity questions to the court; and by ignoring both the superseding Amended Complaint and Comcast's waiver. The proper remedy is reversal of ECF 72 and ECF 82, with instructions that the formation question be resolved by the court under ordinary Massachusetts contract principles — and, following reversal of ECF 84, against the Amended Complaint as the operative pleading.

**ISSUE IV**

**THE CUMULATIVE EFFECT OF THE DISTRICT COURT'S ONE-DIRECTIONAL PROCEDURAL RULINGS REINFORCES THE CASE FOR VACATUR AND REMAND**

**Introduction**

This Issue is not a recusal argument and does not ask the Court to find subjective animus. The claim is objective: at the contested procedural junctures in this case, the district court excused the represented defendants' rule violations while holding the pro se Plaintiff to the strictest application of the same rules. That one-directional pattern denied Plaintiff the even-handed process the Federal Rules contemplate and reinforces the errors identified in Issues I through III. Several of the non-exhaustive rulings below might, in isolation, be defensible exercises of discretion; the point is their consistent direction, not any one of them alone.

**A. Governing Principles**

Three settled principles frame the Issue. First, pro se litigants are owed a measure of solicitude and are not held to the standards of trained counsel. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ.*, 209 F.3d 18, 23 (1st Cir. 2000). Second, errors individually insufficient to require reversal may, in the aggregate, deny a fair proceeding and compel relief.

*United States v. Sepulveda*, 15 F.3d 1161, 1195–96 (1st Cir. 1993). Third, Plaintiff does not contend that adverse rulings alone show bias; they do not. *Liteky v. United States*, 510 U.S. 540, 555 (1994). The point is that materially identical circumstances produced opposite results depending on which side was before the court — an asymmetry reviewable for abuse of discretion and cumulative error without any inquiry into the judge's state of mind.

**B. Illustrative Asymmetries**

**1. The asymmetric characterization of the amendment record.** The same one-directional lens appears in how the court described the parties' filings. After the court itself identified the pleading defects as to the individual Comcast representatives (ECF 11), Plaintiff moved promptly for leave to amend, explaining in an eight-page motion that amendment was needed to cure those court-identified defects, to identify the representatives, to allege their personal-capacity conduct, to preserve the defaulted Comcast allegations, and to add related claims arising from the same facts (ECF 15). The court denied that motion without prejudice for lack of an attached pleading and told Plaintiff how to refile (ECF 16); Plaintiff followed those instructions, obtained the missing identities in discovery, and filed the complete proposed Amended Complaint on the court-set deadline (ECF 66). ECF 84 nevertheless described the August motion as *having offered no explanation for*

*amendment* and labeled the December filing a "*Second Amended Complaint*," though no amended complaint had ever been filed or allowed. Here, as elsewhere in the record, the represented parties' procedural shortcomings were overlooked while the pro se litigant's compliant filings were recast, contrary to the docket, as deficient. The court thus applied one standard to the pro se Plaintiff's filings — recharacterizing compliant submissions as deficient by reading into them flaws the docket does not support — while applying the opposite standard to the represented defendants' filings, overlooking the facial, disclosed deficiencies (undisclosed witnesses, template declarations, entity misidentification) that determined the outcome of both dispositive motions. Plaintiff does not attribute motive; the point is the consistent direction in which the record was read. See Add. 13, 16, 22-27.

**2. The set-aside the court resolved overnight, against the default-judgment request it never resolved at all.** On August 21, 2025, Plaintiff filed a sworn application under Rule 55(b)(2) to empanel a jury to assess damages on the default that had entered against Comcast Corporation. (ECF 19-1). The court never ruled on it. Comcast did not move to set aside that default until September 30, 2025 — more than two months after it entered — and the court granted the motion the *next day*. (ECF 33; ECF 37). The same court that left the pro se Plaintiff's properly filed application pending indefinitely disposed of the represented defendant's belated motion overnight. The collateral effect compounded the asymmetry: once the

Comcast default was set aside but the jury application ignored, Plaintiff's combined ECF 19 filing lost its default-judgment component, and the court then treated the resulting posture as "premature" to justify the heightened amendment standard it applied in ECF 83. *See* Issue I, *supra*.

The timing reinforces the point: Comcast's default was set aside in one day on an affidavit Plaintiff later challenged, while Plaintiff's timely amendment motion waited over three months and was denied on inaccurate record premises and inapplicable standards.

**3. The dispositive double standard on witness disclosure.** The asymmetry is sharpest, and most consequential, on Rule 26(a) and Rule 37(c)(1). The court credited the declaration of Denise Lewis to grant CRM summary judgment (ECF 83), and the declaration of Colin Padgett to compel arbitration (ECF 72), even though *neither witness was disclosed* in the defendants' Rule 26(a)(1) disclosures and Plaintiff raised Rule 37(c)(1) as to both. *See* Issues II & III, *supra*. The court that excused the represented defendants' mandatory-disclosure failures on the two dispositive motions in the case is the same court that would warn Plaintiff on a matching motion for extension of time in ECF 57 of "no further extensions" or deny Plaintiff's motion for leave to amend, predicating it on the materially

inaccurate representation that Plaintiff in ECF 15 had *offered no explanation for amendment*. That is the asymmetry in its most outcome-determinative form.

**4. The asymmetric treatment of extension requests.** The court granted the defendants' requests for more time to oppose Plaintiff's summary-judgment motion as routine matters, without comment — granting one defense extension "to 9/25/25 to File Response/Reply as to [19]" (ECF 23) and granting Comcast "a 14-day extension of time to respond . . . until October 9, 2025" (ECF 27). When Plaintiff sought a short extension necessitated by the court's *own* orders — CRM's court-ordered production (ECF 55) was due the very day Plaintiff's reply was due, and his court-authorized follow-up interrogatories (ECF 53, ECF 54) were outstanding (ECF 56) — the court granted it but coupled the grant with a rebuke absent from its treatment of the defendants: "However, Philibert Kongtcheu intentionally filed his motion for partial summary judgment on August 21, 2025, prior to conducting any discovery in this matter, yet bases his request on his need for discovery responses. *There will be no further extensions as to either of these deadlines*." (ECF 57). The court faulted the pro se Plaintiff for needing the very discovery it had just ordered produced, while the represented defendants' two extensions drew no comment at all. See also Plaintiff's explanations in ECF 59-1 pp.3-4 section III. DELAYS & TIMELINE DIFFICULTIES that further add a reasonable accommodation layer. See Add. 18-20, 29-30.

5. The post-order forum asymmetry. Comcast argues here that review is premature because arbitration is pending, yet in arbitration it sought to force Plaintiff to bring all claims there or abandon them. Arbitrator Folkman denied that request, leaving any later preclusion consequences to a later judge or arbitrator. Comcast thus uses arbitration as both shield and sword. This is not a separate ground for reversal; it shows the practical consequence of the district court's failure to require claim-by-claim and transaction-by-transaction scope clarity.

## C. The Cumulative Effect

No single item need be independently reversible for this Issue to carry weight. The cumulative-error doctrine exists because a succession of individually-debatable rulings, all breaking the same way, can deny a litigant the fair proceeding he is due. *Sepulveda*, 15 F.3d at 1195–96. Here the direction was consistent across the default, dispositive-motion, and scheduling stages, and the solicitude ordinarily afforded pro se litigants, *Haines*, 404 U.S. at 520, was not merely absent but reversed. That pattern reinforces the independent grounds for vacatur set out in Issues I through III.

## D. Remedy

The orders under review should be vacated and the case remanded for the reasons stated in Issues I through III. In the alternative, and only to the extent the Court

concludes that the documented asymmetry would make it difficult to restore confidence in the even-handedness of further proceedings before the same judge, this Court has authority under 28 U.S.C. § 2106 to direct reassignment to a different district judge on remand. *See United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977) (en banc) (considering whether reassignment would preserve the appearance of justice without disproportionate waste). Plaintiff requests reassignment only as an alternative to the merits relief sought above.

**CONCLUSION**

For the foregoing reasons, this Court should reverse the denial of leave to amend (ECF 84); vacate the grant of summary judgment to CRM (ECF 83); reverse the order compelling arbitration (ECF 72) and the denial of reconsideration (ECF 82); and remand with instructions that further proceedings be conducted against the Amended Complaint as the operative pleading, with the question of arbitration-contract formation resolved by the court under ordinary Massachusetts contract principles. In the alternative, and only as set out in Issue IV, Plaintiff requests reassignment to a different district judge on remand under 28 U.S.C. § 2106. See Add. 2-15.

Respectfully submitted,

*/s/ Philibert F. Kongtcheu*

Philibert F. Kongtcheu, Plaintiff-Appellant, pro se

195 Binney Street #2311

Cambridge, MA 02142

Tel: (646) 535-8027

Email: kongtcheu@gmail.com

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,085 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Times New Roman 14-point font.

*/s/ Philibert F. Kongtcheu*

Philibert F. Kongtcheu

**CERTIFICATE OF SERVICE**

I certify that on July 8, 2026, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the First Circuit using the CM/ECF system, which will send notice of the filing to all counsel of record.

*/s/ Philibert F. Kongtcheu*

Philibert F. Kongtcheu

# ADDENDUM TABLE OF CONTENTS

Kongtcheu v. Comcast Corp. et al., No. 26-1410 / D. Mass. No. 1:25-cv-11869-RGS

**Required orders**

| | |
|---|---|
| ECF 83 - Memorandum and Order on Plaintiff's Motion for Summary Judgment and CRM's Cross-Motion for Summary Judgment (Mar. 18, 2026) | ADD-2 |
| ECF 84 - Text-Only Order Denying Leave to File First Amended Complaint (Mar. 18, 2026) | ADD-13 |
| ECF 82 - Text-Only Order Denying Reconsideration of Arbitration Order (Mar. 9, 2026) | ADD-14 |
| ECF 72 - Text-Only Order Compelling Arbitration and Staying Case; Follow-Up Stay Order (Dec. 30-31, 2025) | ADD-15 |

**Optional excerpts**

| | |
|---|---|
| Optional Text-Order Excerpts: ECF 11 and ECF 16 | ADD-16 |
| Optional Text-Order Excerpts: ECF 30, ECF 37, and ECF 38 | ADD-17 |
| Optional Text-Order Excerpts: ECF 48 and ECF 53 | ADD-18 |
| Optional Text-Order Excerpt: ECF 55 | ADD-19 |
| Optional Text-Order Excerpts: ECF 57 and ECF 64 | ADD-20 |
| Optional Text-Order Excerpts: ECF 70, ECF 74, ECF 75, and ECF 80 | ADD-21 |
| ECF 15 excerpt - first motion to amend explaining need for amendment | ADD-22 |
| ECF 66 excerpt - motion for leave to file First Amended Complaint | ADD-25 |
| ECF 46 excerpt - relation-back / nunc pro tunc amendment request | ADD-28 |
| ECF 59-1 excerpt - delays and timeline difficulties / medical limitations | ADD-29 |
| ECF 45-1 excerpt - CRM account notes: M2Hold and invalid-balance entries | ADD-31 |
| ECF 81 excerpt - CRM Response to Interrogatory No. 3: M2Hold means credit-reporting hold | ADD-33 |
| ECF 58-1 excerpt - Padgett declaration and specimen Xfinity Mobile agreement | ADD-34 |
| ECF 58-1 excerpt - arbitration carve-out: scope, validity, or enforceability not subject to arbitration | ADD-37 |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 25-cv-11869-RGS

PHILIBERT KONGTCHEU

v.

COMCAST CORPORATION, COMCAST REPRESENTATIVE X, COMCAST
REPRESENTATIVE BHAVYA, COMCAST REPRESENTATIVE CURTIS
XFINITY - EXECUTIVE CUSTOMER RELATIONS, COMCAST
REPRESENTATIVE GABRIELLE K. XFINITY - EXECUTIVE CUSTOMER
RELATIONS, COMCAST REPRESENTATIVE CHERYL L. XFINITY -
EXECUTIVE CUSTOMER RELATIONS, and CREDENCE RESOURCE
MANAGEMENT, LLC

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AGAINST DEFENDANT CREDENCE
RESOURCE MANAGEMENT, LLC AND ON CREDENCE RESOURCE
MANAGEMENT, LLC'S CROSS MOTION FOR SUMMARY JUDGMENT

March 18, 2026

STEARNS, D.J.

Defendant Credence Resource Management, LLC (CRM), is a debt
collection agency that was engaged by Xfinity Mobile (Xfinity), which is
owned by defendant Comcast Corporation (Comcast), to collect a debt that
Xfinity claimed plaintiff Philibert Kongtcheu owed to Comcast. *See* Notice
of Removal, Ex. A (Compl.) [Dkt # 1-1] at 14. Kongtcheu disputes the validity
of the debt. *Id.* at 3-9. He argues that CRM violated The Fair Debt Collection
Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, and Massachusetts debt

collection regulations by claiming in its collection demand that the debt was validly owed. Compl. at 19-20. He also claims that CRM failed to provide information required by the applicable debt collection regulations.[1] *Id.* at 20-21. Kongtcheu now moves for summary judgment against CRM. Pl.'s Mot. for Partial Summ. J. against CRM (Pl.'s Mot. for Summ. J.) [Dkt #19] at 1.[2] CRM opposes Kongtcheu's motion and cross-moves for summary judgment in its favor. Def.'s Cross Opp'n [Dkt. #41] at 1.

This case began on May 28, 2025, when Kongtcheu filed suit in the Middlesex Superior Court against CRM and six other defendants.[3] It was subsequently removed to federal court by CRM on July 1, 2025. Kongtcheu's disputes with the other six defendants named in the Complaint (including

---

[1] Collectively, these alleged violations comprise Count 5 of the Complaint. Compl. at 19-21.

[2] Kongtcheu characterizes this as a motion for "partial" summary judgment, presumably because his motion is limited to claims against CRM and no other defendants in the case. However, for clarity, the court refers to this as a motion for summary judgment because it pertains to all claims in the Complaint against CRM.

[3] The other defendants named in the Complaint are Comcast Corporation, Comcast Representative X, Comcast Representative Bhavya, Comcast Representative Curtis Xfinity - Executive Customer Relations, Comcast Representative Gabrielle K. Xfinity - Executive Customer Relations, and Comcast Representative Cheryl L. Xfinity - Executive Customer Relations.

2

Comcast) were sent to arbitration, pursuant to this court's December 30, 2025 order. [Dkt # 72].

Kongtcheu alleges that Xfinity billed him for mobile service and a mobile device that he did not order. Compl. at 3-9. Kongtcheu challenged Xfinity's bills for these disputed items and did not pay them, leading Xfinity to engage CRM to collect the debt that Xfinity claimed he owed. *Id.* at 14. Kongtcheu alleges various claims that stemmed from these events and their aftermath,[4] and he seeks monetary relief as well as costs and attorney's fees. *Id.* at 15-22. For the following reasons, the court denies Kongtcheu's motion for summary judgment against CRM and allows CRM's cross-motion for summary judgment.[5]

---

[4] The aftermath included Kongtcheu filing complaints with the Massachusetts Department of Telecommunications and Cable, Massachusetts Office of the Attorney General and the Federal Communications Commission. *Id.* at 11-13.

[5] Following Kongtcheu's August 21, 2025 motion for summary judgment and CRM's October 9, 2025 cross-motion for summary judgment, Kongtcheu filed a motion to amend the Complaint on December 17, 2025. [Dkt # 66]. (Kongtcheu initially moved to amend the Complaint on August 4, 2025, but this court denied the motion without prejudice because CRM had filed a responsive pleading more than 21 days prior, *see* Fed. R. Civ. P. 15 (a)(1), and Kongtcheu's motion did not include a proposed Amended Complaint or an explanation for why the amendment was requested. [Dkt # 16]. Kongtcheu subsequently moved for an extension to amend the Complaint by December 17, 2025, which this court granted. [Dkt # 64]. In the course of extending the deadline, this court noted that "futile" claims would not be appropriate. [Dkt # 30].)

## BACKGROUND

Comcast's Xfinity Mobile engaged CRM to collect the alleged debt owed by Kongtcheu on October 21, 2024.  Def.'s Statement of Facts [Dkt. # 41-2] at 4.  Between October 23, 2024, and November 13, 2024, CRM made

---

The proposed amended Complaint, filed with Kongtcheu's motion to amend on December 17, 2025, includes several new claims against CRM. Mot. to Amend Compl., Ex. A (Proposed Am. Compl.) [Dkt # 66-1] ¶¶ 138-154.  The court denies the motion to amend given First Circuit precedent and the applicable federal Rule.

"A motion to amend a complaint will be treated differently depending on its timing and the context in which it is filed." *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 11-12. (1st Cir. 2004).  Initially, "[c]onsent to file amended pleadings 'shall be freely given when justice so requires,' unless the amendment would be futile or reward undue delay." *Adorno v. Crowley Towing And Transp. Co.,* 443 F.3d 122, 126 (1st Cir. 2006), quoting Fed. R. Civ. P. 15(a).  However, "[t]he bar for a plaintiff tendering an amended complaint is higher after a motion for summary judgment has been filed, as the plaintiff must demonstrate 'that the proposed amendments were supported by substantial and convincing evidence.'" *Id.,* quoting *Resolution Trust Corp. v. Gold*, 30 F.3d 251, 253 (1st Cir. 1994).

Kongtcheu's proposed Amended Complaint, filed after the motions for summary judgment, adds the following claims against CRM, which are not alleged in the original Complaint: violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), intentional infliction of emotional distress, violation of the Massachusetts Civil Rights Act, M.G.L. c. 12, §§ 11H, 11I, violation of M.G.L. c. 93A, abuse of process, civil conspiracy, and aiding and abetting. Proposed Am. Compl. ¶¶ 138-154.  Given the lack of substantial and convincing support for the new claims, as well as the prejudice inherent in their late filing, the court denies Kongtcheu's motion to amend the Complaint with respect to CRM.

frequent[6] calls to Kongtcheu, but "[n]one of the calls connected to a person and CRM did not leave any voicemails," according to the sworn affidavit of Denise Lewis, CRM's Associate Vice President of Risk Compliance.  Lewis Aff. [Dkt # 77] at 2.[7]  Kongtcheu disputes this point, stating that he picked up "at least one call."  Pl.'s Resp. to Def.'s Statement of Facts at 4.

On October 23, 2024, CRM sent a demand letter to Kongtcheu, stating that "[w]e are trying to collect a debt that you owe to Xfinity Mobile."  Pl.'s Mot. for Summ. J., Ex. D [Dkt #19-4] at 40.  In the letter, CRM stated that Kongtcheu owed Xfinity Mobile $404.56, but that a payment of $327.69 by December 30, 2024, would be sufficient to "resolve your account."  *Id*.  The $404.56 amount referenced in CRM's letter to Kongtcheu was consistent with the amount included in written communications from Xfinity Mobile to Kongtcheu on October 19, 2024, and November 22, 2024.  *See Id*. at 20, 50.

On November 4, 2024, Kongtcheu replied to CRM in a letter, stating: "This will serve as your legal notice pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, to cease and desist all further communication

---

[6] Kongtcheu alleges that CRM called him 19 times whereas CRM alleges that it made 13 unanswered calls to Kongtcheu.  Pl.'s Resp. to Def.'s Statement of Facts [Dkt # 60-1] at 2.

[7] Lewis's account is based in part on CRM's internal records of its interactions with Kongtcheu.  *Id*. at 2.

5

with me in regard to the above referenced debt or debts . . . . By sending this letter it is my intention to stop all your calls and collection activity." *Id.* at 42. Lewis's affidavit states that, following CRM's receipt of this letter, "CRM made no further attempts to collect on the account." Lewis Aff. at 3.

On November 21, 2024, CRM sent a final letter to Kongtcheu. *See* Pl.'s Mot. for Summ. J., Ex. D at 43. CRM stated: "We have investigated your dispute in coordination with Xfinity Mobile and verified that the charges on your account are valid . . . . [T]his response is exclusively for the purpose of providing information related to your dispute. We will not initiate communication with you regarding this account any further." *Id.*

Kongtcheu argues that CRM did not substantiate the validity of the debt, as described in its letter to him, because Comcast's internal records of Kongtcheu's account do not contain an entry that reflects such an effort by CRM. Pl.'s Resp. to Def.'s Statement of Facts at 4. However, CRM maintains that it did validate the debt, an undertaking reflected in its internal "Account Information" log (the CRM Log), documenting CRM's interactions with Kongtcheu. Specifically, an entry dated November 20, 2024, states: "Written Investigation Response received on: 11/19/2024 . . . investigation has determined the charges on this account are valid." Def.'s Cross Opp'n, Ex. A-1 [Dkt # 41-4] at 6. Additionally, Lewis's affidavit cites the CRM Log and

6

states: "On November 19, 2024, Xfinity Mobile notified CRM the charges were valid." Lewis Aff. at 3.

Kongtcheu alleges that CRM subsequently reported his default to credit agencies. Pl.'s Mot. for Summ. J. at 4. As evidence to support this claim, Kongtcheu points to the CRM Log, which includes two entries that are dated April 28, 2025. Pl.'s Reply in Supp. of Mot. for Summ. J. [Dkt # 60] at 5-6. These entries include Kongtcheu's address and state "BILL_TO_ADDRESS: PHILIBERT KONGTCHEU" and "CES_CUSTOMER : PHILIBERT KONGTCHEU." *See* Def.'s Cross Opp'n, Ex. A-1 at 3. Kongtcheu alleges that the date of this entry in CRM's "Account Information" log coincides with a drop in his credit rating. Pl.'s Reply in Supp. of Mot. for Summ. J. at 5-6. In addition, he states in a sworn affidavit that he "submitted an online credit card application with Wells Fargo Bank, N.A," which denied the application. Pl. Aff. [Dkt. # 46-1] at 1. He subsequently contacted the consumer credit reporting company Experian, which informed him that "an adverse credit event related to a Comcast/CRM account appeared" on his credit report. *Id.* However, CRM denies reporting Kongtcheu to any credit agency. Def.'s Cross Mot., Statement of Material Facts [Dkt # 41-2] at 3. CRM supports its position by citing Lewis's affidavit, which attests to this fact. Lewis Aff. at 3.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphases in original). A material fact is one which has the "potential to affect the outcome of the suit under applicable law." *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). In assessing the genuineness of a material dispute, the facts are to be "viewed in the light most flattering to the party opposing the motion." *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995).

## ANALYSIS

Kongtcheu's Complaint alleges that CRM's actions violated federal and state debt collection laws.[8] First, Kongtcheu claims that CRM violated 15

---

[8] Kongtcheu's Motion for Summary Judgment raises additional theories of liability, which are also included in the proposed Amended Complaint. However, the court's review is limited to the claims included in the original Complaint. *See supra* note 5.

8

U.S.C. § 1692e (2)(A), which prohibits "the false representation of . . . the character, amount, or legal status of any debt by a debt collector." Compl. at 19. While Kongtcheu disputes whether CRM definitively validated his debt with Comcast, CRM's representation of the "character," "amount," and "legal status" of the debt were consistent with the information provided to CRM by Comcast.[9] As a result, Kongtcheu has not sufficiently alleged a violation of 15 U.S.C. § 1692e (2)(A).

Kongtcheu also claims that CRM violated 15 U.S.C. § 1692g (b) and 940 Mass. Code Regs. § 7.08, which require that a debt collector who has been timely notified by a consumer that a debt is disputed "cease collection of the debt," until the collector provides additional materials to the consumer, including verification of the debt. Kongtcheu highlights that, among the materials that a debt collector is required to provide a debtor before resuming collection activity under 940 Mass. Code Regs. § 7.08 are "all documents, including electronic records or images, which bear the signature of the debtor and which concern the debt being collected." He

---

[9] The validity of the information provided by Comcast will be resolved in the course of the mediation taking place between Kongtcheu and the six other defendants in this case, pursuant to this court's order. *See* [Dkt # 72].

writes that CRM did not provide him with these materials.[10]  Compl. at 20. Kongtcheu does not provide evidence that CRM engaged in additional communication with him after receiving his letter asking that CRM cease its collection efforts.  As a result, CRM has not yet incurred an obligation to provide the required materials to him.  Therefore, Kongtcheu has not alleged violations of 15 U.S.C. § 1692g (b) and 940 Mass. Code Regs. § 7.08.[11]

There is no dispute of the material facts with respect to Kongtcheu's allegations against CRM.  Moreover, viewing all facts in the light most favorable to Kongtcheu, CRM is entitled to judgment as a matter of law.

**ORDER**

---

[10] In addition, 940 Mass. Code Regs. § 7.08 requires that debt collectors provide certain information within five days of initiating communication with debtors.  It is undisputed that CRM's first letter to Kongtcheu, sent on October 23, 2024, contained the required information. Pl.'s Mot. for Summ. J., Ex. D at 40.

[11] Kongtcheu's Complaint states that CRM's alleged violations of the FDCPA – specifically the alleged violations of 15 U.S.C. §§ 1692e (2)(A), 1692g (b) – mean that CRM "is co-contributor to, and jointly liable" for the alleged intentional infliction of emotional distress caused by several other defendants named in the case.  Compl. at 20.  To support this claim, Kongtcheu cites 15 U.S.C. § 1692k, which holds debt collectors who violate the FDCPA liable for "any actual damage sustained by such person as a result of such failure," and argues it applies to CRM.  However, the court does not find the underlying violations of the FDCPA that would support a theory of joint liability under 15 U.S.C. § 1692k.  (As noted previously, the court denies Kongtcheu's motion to amend the Complaint against CRM to include a direct claim of intentional infliction of emotional distress.)

For the forgoing reasons, Kongtcheu's motion for summary judgment is <u>DENIED</u>, and CRM's cross-motion for summary judgment is <u>ALLOWED</u>.

SO ORDERED.

<u>/s/ Richard G. Stearns</u>
UNITED STATES DISTRICT JUDGE

11

# ECF 84 - Text-Only Order Denying Leave to Amend

## ECF 84 - Docket Text

Source: Entry #85; All_ECF_Emailed_Entries.pdf p. 91

Judge Richard G. Stearns: ELECTRONIC ORDER entered denying [66] Motion for Leave to File Document, plaintiff Philibert Kongtcheu's motion to amend his Complaint. [Dkt #66]. See also Dkt # 83 at n.5. This case was removed to federal court on July 1, 2025. Notice of Removal [Dkt #1-1]. On August 4, 2025, Kongtcheu moved to amend the Complaint, [Dkt #15], and this court denied the motion because CRM (the only active defendant at the time) had filed a responsive pleading more than 21 days prior, see Fed. R. Civ. P. 15 (a)(1), and he did not include a proposed Amended Complaint or an explanation for why the amendment was necessary. [Dkt # 16]. On December 17, 2025, Kongtcheu again moved to file an Amended Complaint with a proposed Second Amended Complaint attached. [Dkt # 66]. The proposed Second Amended Complaint makes new allegations against the defendants named in the original Complaint and against additional parties that were not named in the original Complaint. [Dkt # 66-1]. However, Kongtcheu's claims against the original defendants are no longer before this court, as CRM has been dismissed, [Dkt #83], and the Comcast defendants are at arbitration pursuant to this court's order, [Dkt # 72]. A plaintiff cannot amend a Complaint to name new defendants in a case where the defendants named in the original Complaint are no longer before the court. Kongtcheu's motion to amend the Complaint is therefore DENIED. (MZ)

# ECF 82 - Text-Only Order Denying Reconsideration

## ECF 82 - Docket Text

Source: Entry #83; All_ECF_Emailed_Entries.pdf pp. 88-89

Judge Richard G. Stearns: ELECTRONIC ORDER entered denying [78] Motion for Reconsideration. Plaintiff Philibert Kongtcheu asks the court to reconsider its 12/20/2025 Order compelling arbitration arguing that the court relied on a 'procedurally barred and factually inaccurate declaration' and 'that the question of contract formation remains unproven.' Mot. for Reconsideration (Dkt # 78) at 1. 'The granting of a motion for reconsideration is an extraordinary remedy which should be used sparingly.' Palmer v. Champion Mortgage, 465 F.3d 24, 30 (1st Cir. 2006), quoting 11 Charles Alan Wright, et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995). The moving party must 'either clearly establish a manifest error of law or must present newly discovered evidence.' Pomerleau v. W. Springfield Pub. Sch., 362 F.3d 143, 146 n.2 (1st Cir. 2004), quoting FDIC v. World Univ. Inc., 978 F.2d 10, 16 (1st Cir. 1992). Kongtcheu has failed to evidence the court's commission of 'a manifest error of law' or to present 'newly discovered evidence.' Kongtcheu complains about Comcast's submission of the Declaration of Colin Padgett, Comcast's Senior Director of Regulatory Compliance Strategy, in support of its Motion to Compel Arbitration, asserting that Comcast failed to list Padgett in its initial disclosures. See Fed. R. Civ. P. 26(a)(1). The court entered a pretrial Order on August 18, 2025, setting initial disclosures for September 18, 2025. Comcast entered the case on October 1, 2025 (Dkt #37), filed it Answer on October 17, 2025, and the court added it to the pretrial schedule on October 20, 2025, requiring its initial disclosures on October 31, 2025. Comcast moved to compel plaintiff to arbitration less than three weeks later -- on November 18, 2025. Given this timeline, the court cannot see any extraordinary impact this omission had on the case. With regard to the viability of the arbitration clause, the law in this area is settled. The arbitration clause in the Xfinity Mobile Customer Agreement is clear Kongtcheu opened an account on May 19, 2021, and used Comcast's services. The motion for reconsideration is DENIED. (MZ) Kongtcheu v. Comcast Corp. et al, 1:25-cv-11869-RGS — ECF Email Compilation

# ECF 72 - Text-Only Order Compelling Arbitration and Stay

## ECF 72 - Docket Text

Source: Entry #72; All_ECF_Emailed_Entries.pdf pp. 76-77

Judge Richard G. Stearns: ELECTRONIC ORDER entered granting [58] Motion to Compel Arbitration. Defendants, Comcast Corporation, Comcast Representative X, Comcast Representative Bhavya, Comcast Representative Curtis Xfinity Executive Customer Relations, Comcast Representative Gabrielle K. Xfinity Executive Customer Relations, Comcast Representative Cheryl L. Xfinity Executive Customer Relations (Comcast) ask the court to compel plaintiff Philibert Kongtcheu to arbitrate his claims against them. Kongtcheu opposes the motion claiming that Comcasts arbitration clause 'ceased to exist' before the dispute arose, and that the scope of the Agreement is limited to certain contract disputes. Pl. Opp'n at 4. '[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.' Moses H. Cone Meml Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). 'That policy requires ambiguities as to the scope of the arbitration clause itself [to be] resolved in favor of arbitration.' Ouadani v. TF Final Mile LLC, 876 F.3d 31, 36 (1st Cir. 2017), quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 476 (1989). Ultimately, the 'party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.' See Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91 (2000). Kongtcheu asserts that Comcast engaged in improper billing practices. The Comcast/customer arbitration agreement is clear. It requires that any and all claims or controversies related to us or our relationship with you... shall be resolved through individual arbitration. Dkt #58-1 (Ex. B) at 5. See also Ouadani, 876 F.3d at 36 (A party that seeks to compel arbitration pursuant to the FAA, 9 U.S.C. § 1, et seq., must show '(1) that a valid agreement to arbitrate exists, (2) that the movant is entitled to invoke the arbitration clause, (3) that the other party is bound by that clause, and (4) that the claim asserted comes within the clause's scope.'), quoting InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003); Hoolahan v. IBC Advanced Alloys Corp., 947 F.3d 101, 112 (1st Cir. 2020) (explaining requirements of Section 10(a) of the Federal Arbitration Act). Comcast's BINDING ARBITRATION clause goes on to define a dispute as 'any and all claims for relief and theories of liability, whether Kongtcheu v. Comcast Corp. et al, 1:25-cv-11869-RGS — ECF Email Compilation based in contract, tort, fraud, negligence, statute regulation' and applies to claims that 'arise after the expiration or termination of this agreement.' Id. See also Biller v. S-H OpCo Greenwich Bay Manor, LLC, 961 F.3d 502, 513 (1st Cir. 2020) (holding contractual arbitration provisions are binding and enforceable 'even if the grievant doesn't complain until after the contract expires'). Accordingly, this case is STAYED, pending the outcome of the arbitration. The court requires that if the plaintiff intends to go forward with his claims, the parties proceed to arbitration within the next 60 days and file a status report with the court every 60 days. The Clerk will STAY this case pending the completion of the arbitration. SO ORDERED. (MZ)

## ECF 72 Stay Order - Docket Text

Source: Entry #73; All_ECF_Emailed_Entries.pdf p. 78

Judge Richard G. Stearns: ORDER entered. Case stayed.(JAM) [Editor's note: This follow-up order to ECF 72 (Order on Motion to Compel Arbitration) staying the case does not have its own ECF docket number.]

# Optional Text-Order Excerpts: ECF 11 and ECF 16

Optional short excerpts from text-only rulings selected for understanding the issues on appeal under 1st Cir. R. 28.0(a)(2).

## ECF 11 - Partial Default / Pleading-Defect Order

Source: Entry #11; All_ECF_Emailed_Entries.pdf p. 14

Judge Richard G. Stearns: ELECTRONIC ORDER entered granting in part and denying in part [8] Motion for Entry of Default. DENYING the motion for Default as to Defendant, Credence Resource Management, LLC. ALLOWING as to defendant, Comcast Corporation, the company having joined in the removal of this action, having notice of this matter, see Dkt #1 at para. 5. and has failed to respond to the Complaint. The default motion is DENIED as to the individual defendants as inadequately named and plaintiff alleging no action taken by these defendants in their personal capacities. (JAM)

## ECF 16 - First Amendment Denied Without Prejudice

Source: Entry #16; All_ECF_Emailed_Entries.pdf p. 19

Judge Richard G. Stearns: ELECTRONIC ORDER entered denying [15] Motion to Amend without prejudice to refiling. To amend the Complaint, plaintiff Philibert Kongtcheu must file a motion to amend explaining why the amendment is necessary. Kongtcheu must attach his proposed Amended Complaint to the motion for the court to assess it viability in deciding the motion. As the Amended Complaint replaces the original, it must be complete. If the motion to amend is allowed by the court, it must be served on all parties who are not automatically noticed on the docket (at this time only Credence Resource Management, LLC receives automatic notices). (mkz)

# Optional Text-Order Excerpts: ECF 30, ECF 37, and ECF 38

Optional short excerpts from text-only rulings selected for understanding the issues on appeal under 1st Cir. R. 28.0(a)(2).

## ECF 30 - Futility Caveat / Amendment Extension

Source: Entry #30; All_ECF_Emailed_Entries.pdf p. 33

Judge Richard G. Stearns: ELECTRONIC ORDER entered finding as moot [28] Motion for Extension of Time to Amend as plaintiff has filed a corrected version of the motion; granting in part and reserving the specific ruling on amendment in [29] Corrected motion. As the court has extended Credence Resource Management's response date to October 9, 2025, plaintiff Philibert Kongtcheu has asked to extend his deadline for amending his Complaint. The motion is ALLOWED in part. If amendment to Kongtcheu's claims against Credence are appropriate (not futile), the court will reset the schedule in its Order on the motion. (MZ)

## ECF 37 - Default Set Aside

Source: Entry #37; All_ECF_Emailed_Entries.pdf p. 40

Judge Richard G. Stearns: ELECTRONIC ORDER entered granting [33] Motion to Set Aside Default entered on 7/22/25 (Dkt #11). Comcast will file a response to the Complaint no later than October 17, 2025. (MZ)

## ECF 38 - Comcast Extension / No More Delay

Source: Entry #38; All_ECF_Emailed_Entries.pdf p. 41

Judge Richard G. Stearns: ELECTRONIC ORDER entered granting [36] Motion for Extension of Time for the Comcast Defendants to lodge any reasonable objections and to respond to Plaintiff's First Set of Requests for Production and Interrogatories until October 30, 2025 and to serve their Initial Disclosures under Rule 26. Because the Comcast defendants have had notice of this case since agreeing to the removal from state court, the court expects no more delay in this matter. (MZ)

# Optional Text-Order Excerpts: ECF 48 and ECF 53

Optional short excerpts from text-only rulings selected for understanding the issues on appeal under 1st Cir. R. 28.0(a)(2).

## ECF 48 - Leave to File Reply to CRM Cross-Motion

Source: Entry #48; All_ECF_Emailed_Entries.pdf p. 51

Judge Richard G. Stearns: ELECTRONIC ORDER entered granting [46] Motion for Leave to File a Reply brief to Dkt #41. The court will permit plaintiff Philibert Kongtcheu to file a reply to issues raised in defendant Credence Resource Management, LLC's Opposition. The Reply can be no more than 8 pages and must be filed in the next seven days (by October 27, 2025). The court notes that on October 9, 2025, Credence Resource Management filed a cross motion for summary judgment as part of its Opposition to Kongtcheu's motion for partial summary judgment. Dkt #41. Kongtcheu may file the requested Reply but has until October 30, 2025, to oppose the dispositive portion of Credence Resource Management's motion. (MZ)

## ECF 53 - Motion to Strike Denied

Source: Entry #53; All_ECF_Emailed_Entries.pdf p. 56

Judge Richard G. Stearns: ELECTRONIC ORDER entered denying [45] Motion to Strike. Plaintiff Philibert F. Kongtcheu asks the court to strike defendant Credence Resource Management, LLC's (CRM) Exhibits Dkt #41-3, Dkt #41-4, and Dkt #41-6 appended to its Opposition to Plaintiff's Motion for Partial Summary Judgment asserting that each document 'is inadmissible and improperly withheld.' Mot. to Strike (Dkt #45) at 2. Further, Kongtcheu asks the court to impose sanctions on CRM claiming that it has acted in bad faith 'withholding evidence, submitting truncated and misleading materials, filing pleadings out of time, misrepresenting procedural facts and disregarding discovery obligations and ethical duties.' Id. at 1-2. Under Fed. R. Civ. P. 26(b)(1), the scope of discoverable evidence is quite broad and not limited to admissible evidence... Docket # 41-3, DECLARATION OF DENISE LEWIS; Dkt # 41-4, Kongtcheu Account Information; and Dkt #41-6, Kongtcheu's call logs, all fall within the scope of Rule 26. Under Federal Rule of Civil Procedure 26(e), parties have a duty to timely supplement or correct previous discovery responses and initial disclosures if they obtain new information that makes the previous response incorrect or incomplete. CRM attached these documents to a court filing -- there is no evidence that the documents were purposefully withheld. If Kongtcheu requires further information regarding the call log, he may file a limited follow up interrogatory within the next ten days for clarification as to any unclear aspects of the document. (MZ)

# Optional Text-Order Excerpt: ECF 55

Optional short excerpts from text-only rulings selected for understanding the issues on appeal under 1st Cir. R. 28.0(a)(2).

## ECF 55 - CRM Discovery Limited

Source: Entry #55; All_ECF_Emailed_Entries.pdf pp. 58-59

Judge Richard G. Stearns: ELECTRONIC ORDER entered granting in part and denying in part [42] Motion for Discovery. On a motion to compel discovery, Local Rule 37.1(b) requires the moving party to state with particularity each contested interrogatory and request for production and state why the information is discoverable. L.R. 37.1(b). Further, the burden lies with plaintiff to show the relevance of each request and that it satisfies the 'burdensome test' a balance of the needs of the case with the amount in controversy, the parties' resources, the importance of the issues at stake, and the importance of the discovery in resolving those issues (to balance a party's need for information with protection from excessive demands in order to make discovery fair and efficient). See Fed. R. Civ. P. 26(b)(2)(C). To facilitate moving the discovery process forward, the court will make use of plaintiff Philibert Kongtcheu's deficiency letter to issue a ruling on his motion to compel. First, the court agrees with defendant CRM that a portion of Kongtcheu's requests ask for privileged or irrelevant information, or are overly burdensome in light of CRM's repeated statement in its responses, sworn as true in the Affidavit of Michelle Sanginiti, that it did not 'credit report' Kongtcheu's account, and after its November 21, 2024 letter, 'made no further attempts to collect the debt.' Dkt #50-3 at Resp. No. 10. CRM has provided Kongtcheu with its account notes for his case, along with information regarding Comcast's placement of Kongtcheu's account with CRM. It has also identified its contact at Comcast for the account. It appears to the court that some of Kongtcheu's requests are for information in Comcast's possession, custody, or control. CRM's insurance disclosure is adequate. Also, there are several requests that the court is unable to evaluate because the technical language is unexplained. Accordingly, the only items for CRM to produce are its call logs for Kongtcheu's number and a privilege log for relevant withheld documents. (MZ)

# Optional Text-Order Excerpts: ECF 57 and ECF 64

Optional short excerpts from text-only rulings selected for understanding the issues on appeal under 1st Cir. R. 28.0(a)(2).

## ECF 57 - No Further Extensions

Source: Entry #57; All_ECF_Emailed_Entries.pdf p. 61

Judge Richard G. Stearns: ELECTRONIC ORDER entered granting [56] Motion for Extension of Time to extend the deadline for Plaintiffs Reply and Cross-Motion for Partial Summary Judgment from November 14, 2025 to December 2, 2025, and to extend the deadline to amend the pleadings and/or join parties under the Pre-Trial Order (Dkt # 49) from November 24, 2025 to December 9, 2025. However, Philibert Kongtcheu intentionally filed his motion for partial summary judgment on August 21, 2025, prior to conducting any discovery in this matter, yet bases his request on his need for discovery responses. There will be no further extensions as to either of these deadlines. (MZ)

## ECF 64 - Deadline to Move to Amend Extended to December 17, 2025

Source: Entry #64; All_ECF_Emailed_Entries.pdf p. 68

Judge Richard G. Stearns: ELECTRONIC ORDER entered granting in part and denying in part [63] Philibert Kongtcheu's Motion for Extension of Time to Amend. The motion for extension of time to file a motion to amend the Complaint is ALLOWED until December 17, 2025, to coincide with his Opposition to Comcast's Motion to Compel Arbitration. But as the court has explained to Mr. Kongtcheu regarding his prior motion to amend, it is a request to amend. See Dkt # 16, #18, #30. Once the parties filed a responsive pleading, his ability to file an Amended Complaint without leave of court had expired. He must file a PROPOSED Amended Complaint with a motion pointing out what has changed about the Complaint. It is not entered on the docket as an AMENDED COMPLAINT until the court approves it by granting the motion. (MZ)

# Optional Text-Order Excerpts: ECF 70, ECF 74, ECF 75, and ECF 80

Optional short excerpts from text-only rulings selected for understanding the issues on appeal under 1st Cir. R. 28.0(a)(2).

## ECF 70 - Comcast Extension to Respond to Pending Motions

Source: Entry #70; All_ECF_Emailed_Entries.pdf p. 74

Judge Richard G. Stearns: ELECTRONIC ORDER entered granting [67] Comcast Motion for Extension of Time to January 14, 2026 to Object/Respond to Plaintiff's Pending Motions re: Cross-Motion to Compel and Motion for Leave to Amend Complaint. (MZ)

## ECF 74 - CRM Deadlines Stayed Pending Summary-Judgment Ruling

Source: Entry #75; All_ECF_Emailed_Entries.pdf p. 80

Judge Richard G. Stearns: ELECTRONIC ORDER entered granting [73] Motion Defendant, Credence Resource Management, LLC's (CRM), motion to stay pretrial schedule in this case pending the court's ruling on Plaintiff's Partial Motion for Summary Judgment (Dkt #19) and CRM's Cross-Motion for Summary Judgment (Dkt # 41). (MZ)

## ECF 75 - Court Identifies Lewis Affidavit Misidentification

Source: Entry #76; All_ECF_Emailed_Entries.pdf p. 81

Judge Richard G. Stearns: ELECTRONIC ORDER entered. Credence Resource Management, LLC (CRM) filed an affidavit by Denise Lewis, its Associate Vice President - Risk Compliance [Dkt #41-3]. This affidavit misidentifies the plaintiff in this case as 'Curtis Wilson.' CRM has seven days, until March 4, 2026, to submit a revised affidavit. (JAM)

## ECF 80 - Limited Supplement to Record Allowed

Source: Entry #81; All_ECF_Emailed_Entries.pdf p. 86

Judge Richard G. Stearns: ELECTRONIC ORDER entered granting in part a [79] Motion for Leave to File Document. The motion is ALLOWED only as to 'Response to Interrogatory No. 3 and the accompanying table identifying internal employee identification codes and pseudonyms, as requested in the motion.' The court will not accept any other supplemental materials. The materials must be filed no later than close of business tomorrow (Friday, March 6, 2026). (MZ)

Additionally, Plaintiff seeks to preserve the allegations in the original complaint against Defendant Comcast Corporation, as Comcast has already defaulted on those claims. Plaintiff intends to seek default judgment for damages on these claims while amending the complaint to address deficiencies identified by the Court. The amended complaint may also include additional parties and causes of action as warranted by the facts and applicable law.

In support of this motion, Plaintiff states as follows:

## I. <u>PROCEDURAL HISTORY</u>

1. This case was filed in the Massachusetts Superior Court on May 28, 2025, and removed to this Court by the Defendants on July 1, 2025.

2. Plaintiff moved for entry of default against all defendants for failure to timely respond to the complaint.

3. On July 22, 2025, this Court entered default against **Defendant Comcast Corporation** but denied default as to the **individual defendants**, citing Plaintiff's failure to adequately name them and allege actions taken in their personal capacities.

## II. <u>BASIS FOR AMENDMENT</u>

1. The Court's order identified deficiencies in the original complaint, specifically noting that:

    ○ The individual defendants were inadequately named.

    ○ Plaintiff failed to allege specific actions taken by the individual defendants in their personal capacities.

ADD-22

2. Plaintiff seeks to amend the complaint to:

   ○ Provide **descriptive identifiers** for the individual defendants whose full names remain unknown (e.g., Comcast Representatives Bhavya, Curtis, Gabrielle K., and Cheryl L.), based on the information currently available to Plaintiff.

   ○ Request **discovery** to uncover the full identities of these individuals, as permitted under the applicable rules of procedure.

   ○ **Detail the specific actions** taken by each individual defendant in their personal capacities that contributed to the alleged harm.

   ○ Cure any potential defects in the original pleading and provide additional factual support for the claims against the individual defendants.

3. Plaintiff also seeks to **preserve the allegations in the original complaint** against Comcast Corporation. As Comcast has defaulted on those claims, Plaintiff intends to include the original complaint as part of the amended complaint to ensure that the claims on which Comcast is in default remain intact and actionable.

4. In addition, Plaintiff is in the process of reviewing evidence and information that may warrant the inclusion of **additional parties or causes of action** in the amended complaint. Any such additions will be rooted in the same underlying facts and transactions already at issue, ensuring consistency with the original pleading.

ADD-23

### III. <u>LEGAL STANDARD</u>

1. Under **Federal Rule of Civil Procedure 15(a)(2)**, leave to amend should be "**freely given when justice so requires.**"

2. Courts have consistently held that leave to amend should be granted absent a showing of:

   ○ **Undue delay,**

   ○ **Bad faith or dilatory motive,**

   ○ **Repeated failure to cure deficiencies,**

   ○ **Undue prejudice to the opposing party,** or

   ○ **Futility of amendment.** (*Foman v. Davis*, 371 U.S. 178, 182 (1962)).

3. Preservation of allegations in the original complaint is consistent with **Rule 15(c)(1)(B)**, which permits amendments that "relate back" to the original complaint, provided the claims arise out of the same transaction or occurrence set forth in the original pleading.

### IV. <u>JUSTICE REQUIRES LEAVE TO AMEND</u>

1. Plaintiff, a pro se litigant, has diligently pursued this case and seeks to comply with the Court's directives to address deficiencies in the original complaint.

2. Amending the complaint will allow Plaintiff to:

   ○ Provide **descriptive identifiers** for the individual defendants whose full names remain unknown and request discovery to determine their identities.

   ○ **Adequately name the individual defendants** once their identities are known and allege specific misconduct by each defendant in their personal capacities.

ADD-24

# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

PHILIBERT KONGTCHEU,
Plaintiff,

vs.

Comcast Corporation;
Comcast Representative X;
Comcast Representative Bhavya;
Comcast Representative Curtis Xfinity - Executive Customer Relations;
Comcast Representative Gabrielle K. Xfinity - Executive Customer Relations;
Comcast Representative Cheryl L. Xfinity - Executive Customer Relations;
Credence Resource Management, LLC,
Defendants.

**Civil Action No.: <u>1:25-cv-11869-RGS</u>**

### PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure and the Court's Scheduling Order dated October 20, 2025 (ECF 49), extended with the December 10 (ECF 64) order, Plaintiff Philibert F. Kongtcheu respectfully moves for leave to file the attached First Amended Complaint, submitted herewith as Exhibit A.

In support of this motion, Plaintiff states:

1. This action was originally filed in Middlesex Superior Court on May 28, 2025 and removed to this Court on July 1, 2025 by Defendant Credence Resource Management, LLC.

2. The Court's December 10, 2025 (ECF 64)Order expressly permitted this motion for leave to file an amended complaint by December 17, 2025. This motion is timely under that order.

3. The proposed First Amended Complaint seeks to clarify, expand, and realign the factual allegations and causes of action based on:

- Evidence obtained through discovery,

- Regulatory correspondence received since the filing of the original complaint,

- Factual and legal representations made by Defendants in their motions and affidavits.

4. The proposed amendment does not unduly prejudice any Defendant, introduces no new legal theories unsupported by prior filings, and reflects information Plaintiff has previously presented to Defendants through discovery responses and motion practice.

5. The amendments are necessary to:

- Name additional necessary parties;

- More clearly state the basis of claims for relief against the appropriate defendants under federal and state statutes;

- Conform the pleadings to evolving evidence and judicial rulings to date.

6. Rule 15(a) directs courts to grant leave freely when justice so requires. The proposed amendments are made in good faith, are consistent with the orderly progression of this case, and are drafted to promote fairness and judicial efficiency.

ADD-26

WHEREFORE, Plaintiff respectfully requests that this Court grant leave to file the First

Amended Complaint in the form attached hereto as Exhibit A, and deem it the operative

pleading in this case.

Respectfully submitted,

Dated: December 17, 2025

*/s/ Philibert F. Kongtcheu*

Philibert F. Kongtcheu

Pro Se Plaintiff

195 Binney Street, Apt. 2311

Cambridge, MA 02142

Phone: 646-535-8027

Email: kongtcheu@gmail.com

## II. <u>REQUEST TO AMEND THE COMPLAINT BY RELATION BACK</u>

To the extent that Defendant CRM contends Plaintiff raised new theories of liability—including claims under the Massachusetts Debt Collection Regulations (940 CMR 7.00 et seq.), Massachusetts General Laws Chapter 93A, the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.), and the tort of Intentional Infliction of Emotional Distress—Plaintiff respectfully moves that the Complaint be deemed amended *nunc pro tunc* under Fed. R. Civ. P. 15(a)(2) and 15(c). These claims arise from the same continuing pattern of conduct described in the pleadings: CRM's willful and deceptive attempts to collect and report an invalid debt. Because Defendant has long been on notice of the underlying facts, no prejudice will result from amendment, and relation back under Rule 15(c)(1)(B) is appropriate.

## III. <u>REPLY ON FDCPA AND FCRA LIABILITY — CRM'S KNOWING VIOLATION OF ITS OWN "M2NEVER REPORT ERROR" CONTROL AND COERCIVE CREDIT-REPORTING TACTICS</u>

Defendant's Opposition (ECF 41) newly asserts that CRM acted lawfully and in good faith under the Fair Debt Collection Practices Act (FDCPA) and did not engage in any impermissible credit reporting. CRM's own internal records disprove this assertion. In its Discovery Production (Bates Stamped 09272025), beginning on October 23, 2024, CRM's account log repeatedly displays the system notation: **"M2Never report error: Debtor state MA not allowed to report."** This internal control was designed to prevent CRM from transmitting account data concerning Massachusetts consumers to credit reporting agencies, consistent with Massachusetts law and the FDCPA's prohibitions against false or unfair credit communication (15 U.S.C. §§ 1692e(8), 1692f).

9. The records destroyed included:

- My early-2025 full credit report showing a CRM trade line,

- The April 28, 2025 CRM letter. To the best of my knowledge and understanding, CRM's "REGF" and "RGVSIF" codes are letter-generation cycles next to those entries in its account notes (ECF 45-1) independently verify it.

10. The combination of housing upheaval, document loss, and continued credit uncertainty significantly magnified the distressing emotional toll.

11. I made CRM a party in this action filed on May 28 because I feel that CRM's conduct was knowing, intentional, and outrageous.

12. I have done my very best to help establish the facts as best as I could recollect them.

13. Wherever evidence once in my possession has been lost or unaccounted for, I have done my best to find other relevant corroborating evidence wherever I could and submitted it here for consideration including relevant part of credit scores, and any information I could get via subpoenas from CRAs.

## III. DELAYS & TIMELINE DIFFICULTIES

14. In the past months, due to continuous physical pain aggravated by the stress of these proceedings, I've had to undergo three separate surgical procedures, in the hands and the eyes, the last being on November 20, 2025. Exhibit E. My stitches are to be removed tomorrow December 3, 2025.

15. This has made it more challenging for me to type, hence delays in my filings. In my last request for extension of time I simply said I need more time due to

discovery delays leading the court to warn that there would be no more extensions.

16. I have thus forced myself to prepare this opposition and reply by the court's deadline. However, anxious to timely prepare my submission, I initially composed a combined memorandum of law before carefulling reading the length limitations for each brief and the need to clearly separate.

17. While I have now hastily finished a reply and opposition within my best understanding of the rules, I am also attaching as <u>Exhibit J</u> a copy of the memorandum of law I had originally prepared

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on December 2, 2025

Cambridge, Massachusetts

<u>/s/Philibert F. Kongtcheu</u>

**Philibert F. Kongtcheu**

Pro Se Plaintiff

195 Binney St., Apt. 2311

Cambridge, MA 02142

Tel.: 646-535-8027

Email: kongtcheu@gmail.com

ADD-30

User: TV02                                                                               07/01/2025
                                                                                          5:50 am

# *Account Information*

| | | | |
|---|---|---|---|
| SYS | 06/18/2025 | 11:03:29AM | M2Hold error: M2 Reporting not allowed for CEASE status. |
| SYS | 06/18/2025 | 11:03:29AM | M2Never report error: Debtor state MA not allowed to report |
| SYS | 06/18/2025 | 11:03:29AM | M2Never report error: Debtor state MA not allowed to report |
| TV02 | 06/18/2025 | 11:18:22AM | Account PHILIBERT KONGTCHEU (278566826) was viewed. |
| TV02 | 06/18/2025 | 12:08:12PM | Account PHILIBERT KONGTCHEU (278566826) was viewed. |
| TV02 | 06/18/2025 | 1:29:35PM | Account PHILIBERT KONGTCHEU (278566826) was viewed. |
| TV02 | 06/18/2025 | 4:30:11PM | Account PHILIBERT KONGTCHEU (278566826) was viewed. |
| sys | 06/18/2025 | 4:35:28PM | Recall received in Comcast Pending Recall import |
| UK05 | 06/19/2025 | 7:01:53AM | Account PHILIBERT KONGTCHEU (278566826) was viewed. |
| SYS | 06/19/2025 | 12:24:22PM | M2Hold error: M2 Reporting not allowed for CEASE status. |
| SYS | 06/19/2025 | 12:24:22PM | M2Never report error: Debtor state MA not allowed to report |
| SYS | 06/19/2025 | 12:24:22PM | M2Never report error: Debtor state MA not allowed to report |
| SYS | 06/20/2025 | 3:24:03PM | M2Hold error: M2 Reporting not allowed for CEASE status. |
| SYS | 06/20/2025 | 3:24:03PM | M2Never report error: Debtor state MA not allowed to report |
| SYS | 06/20/2025 | 3:24:03PM | M2Never report error: Debtor state MA not allowed to report |
| TV02 | 06/20/2025 | 6:49:13PM | Account PHILIBERT KONGTCHEU (278566826) was viewed. |
| 9621 | 06/20/2025 | 7:12:33PM | Account PHILIBERT KONGTCHEU (278566826) was viewed. |
| SYS | 06/21/2025 | 3:51:42PM | M2Hold error: M2 Reporting not allowed for CEASE status. |
| SYS | 06/21/2025 | 3:51:42PM | M2Never report error: Debtor state MA not allowed to report |
| SYS | 06/21/2025 | 3:51:42PM | M2Never report error: Debtor state MA not allowed to report |
| SYS | 06/22/2025 | 2:18:58PM | M2Hold error: M2 Reporting not allowed for CEASE status. |
| SYS | 06/22/2025 | 2:18:58PM | M2Never report error: Debtor state MA not allowed to report |
| SYS | 06/22/2025 | 2:18:58PM | M2Never report error: Debtor state MA not allowed to report |
| TV02 | 06/23/2025 | 11:56:13AM | Account PHILIBERT KONGTCHEU (278566826) was viewed. |
| TV02 | 06/23/2025 | 12:04:56PM | Account PHILIBERT KONGTCHEU (278566826) was viewed. |
| TV02 | 06/23/2025 | 12:52:05PM | Account PHILIBERT KONGTCHEU (278566826) was viewed. |
| TV02 | 06/23/2025 | 1:06:59PM | Account PHILIBERT KONGTCHEU (278566826) was viewed. |
| 2691 | 06/24/2025 | 12:08:03AM | Account PHILIBERT KONGTCHEU (278566826) was viewed. |
| SH22 | 06/24/2025 | 3:05:54AM | Account PHILIBERT KONGTCHEU (278566826) was viewed. |
| AT34 | 06/24/2025 | 5:34:17AM | ARRELSTATUSID changed from CEASE to INACTCANCEL |
| AT34 | 06/24/2025 | 5:34:17AM | Action ARREQLINK: Link report requested for PHILIBERT KONGTCHEU using LNDELETE |
| AT34 | 06/24/2025 | 5:34:17AM | Action ARUNASSIGN: (278566826) PHILIBERT KONGTCHEU was already unassigned. |
| AT34 | 06/24/2025 | 5:34:17AM | Action ARRMVCALLBACK: All timed callbacks have been removed for PHILIBERT KONGTCHEU (278566826). |
| AT34 | 06/24/2025 | 5:34:17AM | Account 278566826 paid in full |
| AT34 | 06/24/2025 | 5:34:17AM | Action ARACINACT: Account 278566826 inactivated successfully |
| AT34 | 06/24/2025 | 5:34:17AM | Action ARCANCEL: Account moved to CANCEL phase to cancel it. |
| AT34 | 06/24/2025 | 5:34:17AM | ARACCANCID changed from   to CIF |
| AT34 | 06/24/2025 | 5:34:17AM | CEASE Cease Communications CRJ $409.56 |
| SH22 | 06/24/2025 | 6:11:25AM | Account PHILIBERT KONGTCHEU (278566826) was viewed. |
| JS14 | 06/24/2025 | 7:53:21PM | Account PHILIBERT KONGTCHEU (278566826) was viewed. |
| JS14 | 06/24/2025 | 7:53:39PM | Compliance Review    Complaint investigation: Sarah Kines:   - Client response Resolution Code Solved (Permanently) |

User: TV02

07/01/2025
5:50 am

# *Account Information*

Resolution Notes
Case Type: Collections ECM Case: ECM0014491022 XM Account FA: 1005164731 Resi Account: 8773102263116495 Customer Name: PHILIBERT KONGTCHEU Account investigation has determined the balance on this account is invalid, Collections will cease. Charges nullified through valid billing dispute. A credit of $409.56 has been applied to the account. IMEIs involved with this case. 356125202130659 352774395078037

Problem Details
Support Necessary - Correct Case Type

Resolution Details
Remove Collections

| | | | |
|---|---|---|---|
| TV02 | 06/27/2025 | 12:22:14PM | Account PHILIBERT KONGTCHEU (278566826) was viewed. |
| SYS | 06/28/2025 | 4:06:52PM | M2Hold error: M2 Reporting not allowed for INACTCANCEL status. |
| SYS | 06/28/2025 | 4:06:52PM | M2Never report error: Client minimum balance not meet. It should be GE $50 |
| SYS | 06/28/2025 | 4:06:52PM | M2Never report error: INACT not allowed to report |
| SYS | 06/28/2025 | 4:06:52PM | M2Never report error: Debtor state MA not allowed to report |
| SYS | 06/28/2025 | 4:06:52PM | M2Never report error: Debtor state MA not allowed to report |
| SYS | 06/29/2025 | 12:06:08PM | M2Hold error: M2 Reporting not allowed for INACTCANCEL status. |
| SYS | 06/29/2025 | 12:06:08PM | M2Never report error: Client minimum balance not meet. It should be GE $50 |
| SYS | 06/29/2025 | 12:06:08PM | M2Never report error: INACT not allowed to report |
| SYS | 06/29/2025 | 12:06:08PM | M2Never report error: Debtor state MA not allowed to report |
| SYS | 06/29/2025 | 12:06:08PM | M2Never report error: Debtor state MA not allowed to report |
| TV02 | 06/30/2025 | 11:12:20AM | Account PHILIBERT KONGTCHEU (278566826) was viewed. |
| 9621 | 06/30/2025 | 4:59:30PM | Account PHILIBERT KONGTCHEU (278566826) was viewed. |
| 9621 | 06/30/2025 | 6:29:33PM | Account PHILIBERT KONGTCHEU (278566826) was viewed. |
| SH22 | 07/01/2025 | 2:59:48AM | Account PHILIBERT KONGTCHEU (278566826) was viewed. |

# Optional Record Excerpt: ECF 81 - CRM Response to Interrogatory No. 3

Source: ECF 81, Supplement to the Record Pursuant to ECF 80, Document 81, Filed 03/06/26, pp. 4-5.

Response to Interrogatory No. 3: CRM objects to this Interrogatory as overbroad, disproportional to the needs of the case, and seeking information irrelevant to the allegations in the Complaint. Notwithstanding said objections, M2Hold represents a credit reporting hold is in place and SYS represents a systems note. The remaining acronyms represent IDs for CRM employees - see below:

| ID | Name | Pseudonym |
|---|---|---|
| 2991 | Vaibhav Vinod Salunke | NA |
| KH07 | Kiran Mallikarjun Hunje | NA |
| MN13 | Mahesh Gangadhar Narwate | NA |
| RS87 | Rohit Yashwant Salkar | NA |
| GS27 | Gayatri Gurunath Shetty | NA |
| AT34 | Anup Thakur | NA |
| VK28 | Vinit Kudaturkar | NA |
| FK09 | Fardeen Feroz Khan | Harvey Burke |
| 9405 | Deenar Kale | Sebastian Cooper |
| JS14 | Joanna Sushil Singh | Sarah Kines |
| VS36 | Vishal Shirsath | NA |
| UK05 | Sumedh Bharat Khillare | Rex Green |
| TV02 | Tejal Vijayprakash Vedanti | Tia Harrison |
| SD47 | Shubhangi Dhargalkar | NA |
| 9621 | Ashwini Bhanudas Charholikar | Ashley Hopkins |
| 2691 | Jinoy George Thundiyil | NA |
| SH22 | Sanchita Sharma | NA |
| DL02 | Denise Lewis | NA |

with Comcast's business records, policies, and practices for disseminating subscriber agreements and other legal notices to subscribers of services. I am also familiar with the My Xfinity Mobile Customer Agreement (the "XM Agreement") and its terms and conditions.

5.    I have reviewed Comcast and Xfinity Mobile records that were created and maintained in the ordinary course of business and collected by myself and others working under my direction.

6.    Comcast's records reflect that on or about May 19, 2021, Plaintiff Philbert Kongtcheu ("Plaintiff") opened an account with Comcast for Xfinity Mobile Services (the "Mobile Services").

7.    The provision and use of the Mobile Services is and has been subject to the XM Agreement. A true and accurate copy of the XM Agreement that was provided to Plaintiff and in effect at the time Plaintiff became a Comcast customer in May 2021 is attached as Exhibit B to Comcast's Motion.

8.    A link to the XM Agreement is also provided to new customers via email and a current version of the XM Agreement is and has been available on Comcast's website continuously since before Plaintiff became a Comcast subscriber.

9.    The XM Agreement provides that a customer accepts service in any of the following ways: "(a) agreeing in writing, by email, online, over the phone or in person; (b) activating your Service or Device; (c) using the Service; (d) paying for or acquiring Service or a Device; or (e) creating an Xfinity Mobile online identity and account." Exhibit B, p. 1.

10.    Following account creation, Plaintiff used the Mobile Services from May 19, 2021 until September 25, 2024, when his mobile account was cancelled for non-payment.

11.    The XM Agreement contains a binding arbitration provision that provides: "Any Dispute involving you and us shall be resolved through individual arbitration. In arbitration, there is no judge or jury and there is less discovery and appellate review than in court." The arbitration provision further provides that: "This Arbitration Provision shall be broadly interpreted. 'Dispute' means any and all claims or controversies related to us or our relationship with you, including but not limited to any and all: (1) claims for relief and theories of liability, whether based in contract, tort, fraud, negligence, statute, regulation, ordinance, or otherwise; (2) claims that arose before this or any prior Agreement; (3) claims that arise after the expiration or termination of this Agreement, and (4) claims that are currently the subject of purported class action litigation in which you are not a member of a certified class." Exhibit B, p. 5.

12.    The XM Agreement also defines "us" as "Comcast OTR1, LLC and any of its successors, assigns, parents, subsidiaries, and affiliates, and each of their respective officers, directors, employees and agents, and 'you' means you and any users or beneficiaries of the Service(s)." Id., p. 5. Comcast supplies mobile services in Massachusetts through Comcast OTR1, LLC ("Comcast OTR1"), d/b/a Xfinity Mobile. Xfinity is a registered trademark. The defendant, Comcast Corporation, is a parent, subsidiary, and/or affiliate of Comcast ORT1.

13.    The Arbitration Provision in the XM Agreement provides that the Plaintiff may opt out of arbitration, with no adverse effect on his services, simply by notifying Comcast within thirty (30) days of first account activation. This could be accomplished by completing a simple form available online or by notifying Comcast in writing. Exhibit B, p. 5.

14.    It is Comcast's regular and routine business practice to maintain records of opt-out requests within its arbitration opt-out database. A search of those records shows no record of

# My Xfinity Mobile Customer Agreement

Thanks for choosing Xfinity Mobile. Xfinity Mobile will be provided to you ("you" or "your") on the terms and conditions set forth in this Xfinity Mobile Customer Agreement (the "Agreement") and applicable law by Comcast OTR1, LLC, the entity offering Xfinity Mobile ("we", "us" or "our" or "Xfinity Mobile"). In this Agreement, you'll find important information about your Service (as defined below), including our ability to make changes to your Service and this Agreement's terms, our liability if things don't work out as planned, and how disputes between us must be resolved. This Agreement is subject to applicable tariffs, service guides, posted policies and procedures.

**Note: THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION THAT AFFECTS YOUR RIGHTS UNDER THIS AGREEMENT WITH RESPECT TO ALL SERVICE(S), WHICH IS LOCATED IN THIS AGREEMENT UNDER THE HEADING "BINDING ARBITRATION." YOU MAY ELECT TO OPT OUT OF ARBITRATION IN ACCORDANCE WITH THE TERMS OF THE BINDING ARBITRATION PROVISION. IN ARBITRATION, THERE IS NO JUDGE OR JURY AND THERE IS LESS DISCOVERY AND APPELLATE REVIEW THAN IN COURT.**

## Your Service

Xfinity Mobile includes voice calling, messaging and data, and any optional services you purchase from Xfinity Mobile, such as international calling (countries that are included in our international calling service can be found at https://www.xfinity.com/mobile/plan/international) and roaming for which additional fees or higher rates may apply (collectively, the "Service") and any equipment that you purchase from us or we provide to you for use with your Service, such as a phone, handset, tablet, wearable or SIM card (individually or collectively "Device"). Additional terms and conditions for your Service can be found in offer materials available when you activate or online at http://xfinity.com/mobile/policies/customer-agreement, and are incorporated in this Agreement. All other services that you receive from an operating subsidiary or affiliate of Comcast Cable Communications, LLC ("Comcast"), including any Xfinity Internet service, are subject to the applicable agreement between you and Comcast related to those services. Additional charges for Xfinity Mobile may apply if at least one of the following services is not maintained by you: Xfinity TV, Xfinity Internet, or Xfinity Voice.

## How do I accept this Agreement?

You accept this Agreement in any of the following ways: (a) agreeing in writing, by email, online, over the phone or in person; (b) activating your Service or Device; (c) using the Service; (d) paying for or acquiring Service or a Device; or (e) creating an Xfinity Mobile online identity and account. If you fail to activate Service within 30 days after you purchase a Device, and have not returned that Device pursuant to our return policy, you will be deemed to be using your Service, and to have accepted this Agreement.

When you accept this Agreement, you are representing that you are at least 18 years old and are legally able to enter into an agreement. If you are entering into this Agreement for an organization, you are representing that you are authorized to bind that organization, and where the context requires, "you" means the organization. You agree that you are responsible for access or use of the Service and Devices, and payment of all charges incurred on your account by any user of your Service. By accepting, you are agreeing to every provision of this Agreement, whether or not you have read it.

## How do I cancel Service?

You may cancel a line, or multiple lines, of your Service in accordance with this Agreement and our policies, which may be amended from time to time, or any specific terms associated with your Service plan. See our Xfinity Mobile Customer Guarantee located at https://www.xfinity.com/support/articles/comcast-customer-guarantee.

You also can return your Device to us in accordance with our Device return policy then in effect, which may be amended from time to time. You will be responsible for a restocking fee as set forth in our Device return policy. See our Return Policy located at https://www.xfinity.com/mobile/support/article/returns-and-exchanges. Except as permitted under our return policy, you will continue to be responsible for any outstanding amounts due with respect to any Device even after the cancellation of any line of Service.

## Where and how does my Xfinity Mobile Service work?

Information on our Service coverage area is available at http://xfinity.com/mobile/support/article/223276307/how-do-i-check-for-xfinity-mobile-coverage (the "Coverage Area").

Your Device uses radio transmissions to access your Service. If your Device isn't in range of a transmission signal your Service may not work. Numerous things can affect the availability and quality of your Service, including the capacity available on the cellular network, your Device, terrain, buildings, foliage, and weather. Cellular service availability is determined by the operator of the cellular network and is not guaranteed. Actual speeds of the Service will vary. Features of your Service that rely on location information, such as E911 and GPS navigation, depend on your Device's ability to acquire satellite signals (which typically are not available indoors) and cellular network coverage. While a Device is receiving a software update, you may not be able to use it until the software update is complete.

Your connection to Wi-Fi may also be impacted by a variety of factors, including your Device, interference (from other devices, buildings, or other wireless signals), your distance from the Wi-Fi hotspot, and the number of other users sharing the hotspot. Your Device may automatically connect to Wi-Fi hotspots, including the Wi-Fi network in your home that is connected to your Xfinity Internet service. You may disable the automatic Wi-Fi connection feature on your Device by turning it off using the "Settings" or an equivalent feature of your Device. While you can still manually connect to available Wi-Fi hotspots, disabling the automatic Wi-Fi connection feature may prevent you from using certain other Xfinity Mobile features and may increase your monthly Xfinity Mobile cellular data usage and, therefore, your bill.

**IMPORTANT: IF YOUR XFINITY INTERNET SERVICE AT YOUR HOME IS SUBJECT TO A DATA USAGE PLAN, ALL DATA SENT OR RECEIVED BY YOUR DEVICE (INCLUDING SMS and MMS MESSAGES) WHEN CONNECTED TO YOUR XFINITY HOME WI-FI NETWORK WILL COUNT TOWARDS YOUR MONTHLY XFINITY INTERNET DATA ALLOCATION, REGARDLESS OF THE XFINITY MOBILE OPTION TO WHICH YOU ARE SUBSCRIBED. TO FIND OUT IF YOUR XFINITY INTERNET SERVICE IS SUBJECT TO A DATA USAGE PLAN, CLICK HERE https://customer.xfinity.com/help-and-support/internet/data-usage-find-area. THIS SITE WILL BE UPDATED FROM TIME TO TIME.**

**Either the operator of the cellular network, or we, may elect to modify the cellular or WiFi network and/or the manner in which your Services operate on such network at any time, including, but not limited to, changing the prioritization of traffic, establishing speed**

indicated. Your browser must support 128-bit encryption. If it does not meet these requirements, your browser should instruct you on how to upgrade. All of your billing statements and other required information provided to you in electronic form can be printed or saved electronically to your computer for your records. In order to print a copy of your billing statement or any other document we send, you must have one of the following operating systems and Internet browsers: Windows 7 or higher or Mac OS X 10.10 or higher, Microsoft IE 10.0 or higher, Firefox 37 or higher or Safari 8.0 or higher, Chrome v.42 and higher, and a working printer that is compatible with, and properly connected to your computer. If you use spam filters for your emails, please add the Xfinity Mobile email address to your approved senders list.

If we make material changes to the hardware or software requirements listed above, we'll contact you and provide you with an explanation of the revised hardware or software requirements necessary for your access and retention of such records, and will ask you to confirm your consent to receipt of such records in electronic format only. By providing your consent, you are confirming to us that you are able to access all of the documents, records, and information described in electronic form.

## How can I prevent unintended charges on my bill?

YOU ARE RESPONSIBLE FOR CHARGES TO YOUR ACCOUNT AND MUST MAKE REASONABLE EFFORTS TO MAINTAIN THE SECURITY OF YOUR ACCOUNT. USE CARE WHEN ALLOWING ANOTHER PERSON, INCLUDING A CHILD, TO USE YOUR DEVICE OR A DEVICE ON YOUR ACCOUNT OR IN SHARING ACCESS TO YOUR ACCOUNT OR ACCOUNT SECURITY INFORMATION. You are obligated to pay all charges incurred by you or any other user of any Device associated with your account. Many services and applications are accessible on or through your Device, including purchases of games, movies, music, and other content. The amount and frequency of the charges will be disclosed to you or the person using your Device or a Device associated with your account at the time a purchase is made. If a user on your account chooses to have the charges billed to your account, such charges will become part of the amount due for that billing cycle. For other services and applications, you may incur charges from third-party providers, including, but not limited to, accessing on-line services, calling parties who charge for their telephone-based services, purchasing or subscribing to other offerings via the Internet or interactive options that are separate and apart from the amounts charged by us. Charges may be one-time or recurring. You are solely responsible for all such charges payable to third parties, including all applicable taxes. In addition, you are solely responsible for protecting the security of credit card and other personal information provided to others in connection with such transactions. We may agree to provide billing services on behalf of third parties, as the agent of the third party. Any such third-party charges shall be payable pursuant to any contract or other arrangement between you and the third party. We will not be responsible for any dispute regarding these charges between you and any third party. You must address all such disputes directly with the third party. To the extent that you believe that your account was the subject of fraud, you are required to promptly notify us at 888-936-4968 within thirty (30) days of the disputed charge appearing on your bill or you receiving notice of an irregularity through some other means, whichever is sooner. You agree to fully and honestly cooperate with us in any investigation into your allegations of fraud. If the investigation concludes that fraud on your account has occurred, you will not be responsible for the fraud-related charges. If the investigation concludes that no fraud has occurred or that you participated in actions to defraud us, you will be responsible for the charges and may be liable for additional damages.

## Can I transfer my wireless phone number between carriers?

If you want to take or "transfer" an existing telephone number to Xfinity Mobile, you will need to fill out the number transfer information on the activation page. The time it takes to port your number to Xfinity Mobile may be affected by the accuracy of the information you provide and we make no guarantees for the time required to transfer. If you transfer a number to us, we may not be able to provide some services right away, such as 911 location services.

If you transfer a number from us, we'll treat it as though you asked us to cancel your Service for that number. After the transfer is completed, you won't be able to use your Service for that number, but you'll remain responsible for all fees and charges incurred through the date of cancellation, i.e., the date the number was transferred from Xfinity Mobile. You don't have any rights to your wireless phone number except for any right you may have to port it.

By porting a number into or out of Xfinity Mobile, you are making affirmative representations that you are the person to whom that number is assigned and that you have the authority to port the number. Further, you intend that Xfinity Mobile rely on these representations by you in completing number transfers at your request.

## Notices and Customer Communication

**Consent to Communications from Comcast. You agree that Xfinity Mobile or third parties acting on its behalf may call or text you at your Xfinity Mobile telephone number that you provide to us or that we issue to you, and may do so for any purpose relating to your account and/or the Service to which you subscribe. You expressly consent to receive these calls and texts on your Xfinity Mobile Device and agree that they are not unsolicited. You understand and acknowledge that these calls and texts may use an automatic telephone dialing system and/or artificial or prerecorded messages. If you do not wish to receive these communications, visit your My Account site to manage your communication preferences. You understand and acknowledge that this is the exclusive means of opting out of these communications. You may not opt-out of receiving certain communications pertaining to your account, including, but not limited to, communications regarding emergencies, fraud or other violations of law, security issues, and harms caused to the network. Message frequency depends on your activity with your Service(s). Message and/or data rates may apply. You will not be charged for any notifications from us that you receive to your Device.**

## BINDING ARBITRATION

a. **Purpose.** Any Dispute involving you and us shall be resolved through individual arbitration. In arbitration, there is no judge or jury and there is less discovery and appellate review than in court.

b. **Definitions.** This Arbitration Provision shall be broadly interpreted. "Dispute" means any and all claims or controversies related to us or our relationship with you, including but not limited to any and all: (1) claims for relief and theories of liability, whether based in contract, tort, fraud, negligence, statute, regulation, ordinance, or otherwise; (2) claims that arose before this or any prior Agreement; (3) claims that arise after the expiration or termination of this Agreement, and (4) claims that are currently the subject of purported class action litigation in which you are not a member of a certified class. As used in this Arbitration Provision, "Us" means Comcast OTR1, LLC and any of its successors, assigns, parents, subsidiaries, and affiliates, and each of their respective officers, directors, employees and agents, and "you" means you and any users or beneficiaries of the Service(s). **NOTWITHSTANDING THE FOREGOING, DISPUTES RELATING TO THE SCOPE, VALIDITY, OR**

ENFORCEABILITY OF THIS ARBITRATION PROVISION WILL NOT BE SUBJECT TO ARBITRATION.

c. **Right to Opt Out. IF YOU DO NOT WISH TO ARBITRATE DISPUTES, YOU MAY DECLINE TO HAVE YOUR DISPUTES WITH US ARBITRATED BY NOTIFYING US, WITHIN 30 DAYS OF YOUR FIRST SERVICE ACTIVATION, BY VISITING https://www.xfinity.com/ArbitrationOptOut/ mobile OR IN WRITING BY MAIL TO COMCAST, 1701 JOHN F. KENNEDY BLVD., PHILADELPHIA, PA 19103-2838, ATTN: LEGAL DEPARTMENT/ARBITRATION. YOUR WRITTEN NOTIFICATION TO US MUST INCLUDE YOUR NAME, ADDRESS AND ACCOUNT NUMBER AS WELL AS A CLEAR STATEMENT THAT YOU DO NOT WISH TO RESOLVE DISPUTES WITH US THROUGH ARBITRATION. YOUR DECISION TO OPT OUT OF THIS ARBITRATION PROVISION WILL HAVE NO ADVERSE EFFECT ON YOUR RELATIONSHIP WITH US OR SERVICE(S) PROVIDED BY US. ANY OPT OUTS SUBMITTED AFTER THIS PERIOD WILL BE VOID.**

d. **Initiation of Arbitration Proceeding/Selection of Arbitrator.** The party initiating the arbitration proceeding may open a case with the American Arbitration Association ("AAA") by visiting its website (www.adr.org) or calling its toll free number (1-800-778-7879). You may deliver any required or desired notice to us by mail to Comcast. 1701 JFK Boulevard. Philadelphia. PA 19103-2838 - ATTN: LEGAL DEPARTMENT.

e. **Right to Sue in Small Claims Court.** Notwithstanding anything in this Arbitration Provision to the contrary, either you or we may elect to have an action heard in a small claims court serving the address on your account, if the claim is not aggregated with the claim of any other person and if the amount in controversy is properly within the jurisdiction of the small claims court.

f. **Arbitration Procedures.** This Arbitration Provision shall be governed by the Federal Arbitration Act. Arbitrations shall be administered by AAA pursuant to its Consumer Arbitration Rules (the "AAA Rules") as modified by the version of this Arbitration Provision that is in effect when you notify us about your Dispute. You can obtain the AAA Rules from the AAA by visiting its website (www.adr.org) or calling its toll-free number (1-800-778-7879). If there is a conflict between this Arbitration Provision and the rest of this Agreement, this Arbitration Provision shall govern. If there is a conflict between this Arbitration Provision and the AAA rules, this Arbitration Provision shall govern. If the AAA will not administer a proceeding under this Arbitration Provision as written, the parties shall agree on a substitute arbitration organization. If the parties cannot agree, the parties shall mutually petition a court of appropriate jurisdiction to appoint an arbitration organization that will administer a proceeding under this Arbitration Provision as written applying the AAA Consumer Arbitration Rules. A single arbitrator will resolve the Dispute. Unless you and we agree otherwise, any arbitration hearing will take place at a location convenient to you in the area where you receive your Service from us. If you no longer receive your Service from us when you notify us of your Dispute, then any arbitration hearing will take place 1) at a location convenient to you in the county where you reside when you notify us of your Dispute, provided that we offer Service in that county, or 2) in the area where you received your Service from us at the time of the events giving rise to your Dispute. The arbitrator will honor claims of privilege recognized by law and will take reasonable steps to protect customer account information and other confidential or proprietary information. The arbitrator shall issue a reasoned written decision that explains the arbitrator's essential findings and conclusions. The arbitrator's award may be entered in any court having jurisdiction over the parties only if necessary for purposes of enforcing the arbitrator's award. An arbitrator's award that has been fully satisfied shall not be entered in any court.

g. **Waiver of Class Actions and Collective Relief. THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED OR LITIGATED ON A CLASS ACTION, JOINT OR CONSOLIDATED BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC (SUCH AS A PRIVATE ATTORNEY GENERAL), OTHER SUBSCRIBERS, OR OTHER PERSONS. THE ARBITRATOR MAY AWARD RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF WARRANTED BY THAT INDIVIDUAL PARTY'S CLAIM. THE ARBITRATOR MAY NOT AWARD RELIEF FOR OR AGAINST ANYONE WHO IS NOT A PARTY. THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING. THIS WAIVER OF CLASS ACTIONS AND COLLECTIVE RELIEF IS AN ESSENTIAL PART OF THIS ARBITRATION PROVISION AND CANNOT BE SEVERED FROM IT. THE REMAINING PORTIONS OF THIS ARBITRATION PROVISION ARE NOT ESSENTIAL PARTS OF THIS ARBITRATION PROVISION AND CAN BE SEVERED FROM IT BY A COURT OF COMPETENT JURISDICTION.**

h. **Arbitral Fees and Costs.** If your claim seeks more than $75,000 in the aggregate, the payment of the AAA's fees and costs will be governed by the AAA rules. If your claims seek less than $75,000 in the aggregate, the payment of the AAA's fees and costs will be our responsibility. However, if the arbitrator finds that your Dispute was frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)), the payment of the AAA's fees and costs shall be governed by the AAA Rules and you shall reimburse us for all fees and costs that were your obligation to pay under the AAA Rules. You may hire an attorney to represent you in arbitration. You are responsible for your attorney's fees and additional costs and may only recover your attorneys' fees and costs in the arbitration to the extent that you could in court if the arbitration is decided in your favor. Notwithstanding anything in this Arbitration Provision to the contrary, we will pay all fees and costs that we are required by law to pay.

i. **Survival.** This Arbitration Provision shall survive the termination of your Service(s) with us.

**Waiver of Jury Trial. WHETHER IN COURT OR IN ARBITRATION, YOU AND WE AGREE TO WAIVE THE RIGHT TO A TRIAL BY JURY.**

## INDEMNIFICATION

YOU AGREE THAT YOU SHALL BE RESPONSIBLE FOR AND SHALL DEFEND, INDEMNIFY, AND HOLD HARMLESS XFINITY MOBILE AND OUR PARENTS, SUBSIDIARIES, PREDECESSORS, SUCCESSORS, ASSIGNS, AFFILIATES, SUPPLIERS, CONTRACTORS, DISTRIBUTORS, LICENSORS, BUSINESS PARTNERS, AND THEIR RESPECTIVE OFFICERS, DIRECTORS, MEMBERS, SHAREHOLDERS, EMPLOYEES AND AGENTS, AND SHALL REIMBURSE US FOR ANY DAMAGES, LOSSES OR EXPENSES (INCLUDING WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES AND COSTS) INCURRED BY US IN CONNECTION WITH ANY CLAIMS, SUITS, JUDGMENTS, AND CAUSES OF ACTION ARISING OUT OF: YOUR USE OF YOUR SERVICE OR DEVICE(S); BREACH OF THIS AGREEMENT; OR VIOLATION OF ANY LAWS OR REGULATIONS OF THE RIGHTS OF ANY THIRD PARTY BY YOU, ANY PERSON ON YOUR ACCOUNT, OR ANY PERSON YOU ALLOW TO USE YOUR SERVICE OR DEVICE(S), INCLUDING BUT NOT LIMITED TO VIOLATION OR INFRINGEMENT OF CONTRACTUAL RIGHTS, PRIVACY, CONFIDENTIALITY, COPYRIGHT, PATENT, TRADEMARK, TRADE SECRET, OR OTHER INTELLECTUAL PROPERTY AND PROPRIETARY RIGHTS ARISING FROM YOUR USE OF YOUR SERVICE OR DEVICES; ANY CLAIMS OR DAMAGES ARISING OUT OF THE LACK OF 911/E911 OR DIALING OR TEXTING; OR YOUR BREACH OF ANY PROVISION OF THIS AGREEMENT OR APPLICABLE ACCEPTABLE USE POLICY. YOUR INDEMNIFICATION SURVIVES TERMINATION OF SERVICE OR THIS AGREEMENT.